IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | \| | CRIMINAL NO. 1:06-CR-0154 (CPS) |
| | \| | |
| | \| | The Hon. Charles P. Sifton |
| V. | \| | |
| | \| | |
| KHALID AWAN, | \| | **NOTICE OF MOTION AND MOTION** |
| | \| | **TO DISMISS INDICTMENT BECAUSE** |
| Defendant. | \| | **OF SELECTIVE AND VINDICTIVE** |
| | | **PROSECUTION** |

TO:   LAWRENCE P. FERAZANI, JR., ASSISTANT U.S. ATTORNEY
ELIZABETH J. KRAMER, ASSISTANT U.S. ATTORNEY

PLEASE TAKE NOTICE that on Thursday, September 28, 2006, at 12:00 p.m., or as

soon thereafter as counsel may be heard, the defendant, KHALID AWAN, by and through

counsel Khurrum B. Wahid and Sean M. Maher, will move this Court to dismiss the indictment

because of selective and vindictive prosecution.

**MOTION**

COMES NOW, the Defendant, Khalid Awan, who, by and through counsel, and pursuant

to Fed. R. Crim. P. 12 (b)(3), the Fifth and Sixth Amendments to the United States Constitution,

and other applicable law respectfully moves this Court to dismiss the indictment because of

selective and vindictive prosecution.

**I.      Selective Prosecution**

**A.      Legal Requirements to Support a Claim**

While the government has broad discretion in deciding who to prosecute, the Due Process

Clause of the Fifth Amendment prohibits a decision to prosecute from being based on "an

unjustifiable standard such as race, religion, or other arbitrary classification." U.S. v. Al Jibori,

90 F.3d 22 (2nd Cir. 1996)(quoting Oyler v. Boles, 368 U.S. 448, 456 (1962)).  In addition, the

equal protection component of the Fifth Amendment is "one of the most important . . .

constraints" on prosecutorial decision-making; thus "the decision whether to prosecute may not

be based on an unjustifiable standard such as race, religion, or other arbitrary classification."

U.S. v. Alameh, 341 F.3d 167, 173 (2nd Cir. 2003)(quoting United States v. Armstrong, 517

U.S. 456, 464 (1996) (internal quotation marks omitted)).

To make out a claim of selective prosecution, a defendant must provide "clear evidence"

that the prosecutorial decision or policy in question had both "'a discriminatory effect and . . .

was motivated by a discriminatory purpose.'" Id. (quoting Armstrong, 517 U.S. at 465).   The

discriminatory effect prong requires a showing that "similarly situated individuals of a different

[classification] were not prosecuted." Id.  A defendant seeking to show discriminatory purpose

must show " 'that the decisionmaker . . . selected or reaffirmed a particular course of action at

least in part "because of," not merely "in spite of," its adverse effects upon an identifiable

group.' " Id. (quoting Wayte v. U.S.,470 U.S. 598, 610 (1985)(quoting Personnel Adm'r of

Massachusetts v. Feeney, 442 U.S. 256, 279 (1979)).   Such purpose may, however, be

demonstrated through circumstantial or statistical evidence.  Id. (referencing Arlington Heights

v. Metro. Hous. Dev. Corp., 429 U.S. 252, 266, (1977) ("Determining whether invidious

discriminatory purpose was a motivating factor demands a sensitive inquiry into such

circumstantial and direct evidence of intent as may be available."); Gomillion v. Lightfoot, 364

U.S. 339, (1960); and Yick Wo v. Hopkins, 118 U.S. 356 (1886)).

    **B**.    **The Defense in Entitled To Discovery**

When asserting a claim of selective prosecution, the defense, upon a proper showing, is entitled to discovery. Though "correspondingly rigorous," the showing needed to receive discovery is of a lower threshold than that required to succeed on a merits claim. See Alemah, 341 F.3d at 173. To obtain discovery, defendants need only produce "some" evidence of discriminatory effect and intent, whereas a claim on the merits requires "clear" evidence of discriminatory effect and motive. Id. (referencing U.S. v. Bass, 536 U.S. 862, 863 (2002). As the Second Circuit noted in Alemah:

> "In Armstrong, the Supreme Court held that to show discriminatory effect a defendant seeking discovery must adduce "some evidence that similarly situated defendants of other races could have been prosecuted, but were not." (quoting Armstrong, 517 U.S. at 469). The Court did not decide the question of what showing of discriminatory intent sufficed to support discovery.

Id. at 173-174.

## II.    Vindictive Prosecution

Mr. Awan asserts that the facts delineated below demonstrate not only selective prosecution, but also vindictive prosecution. The United States Supreme Court has held that it is a violation of due process for a prosecutor to charge a defendant in retaliation for the defendant's exercise of constitutional or statutory rights. See Bordenkircher v. Hayes, 434 U.S. 357 (1978); Blackledge v. Perry, 417 U.S. 21 (1974). The Supreme Court has recognized situations in which prosecutorial vindictiveness can be presumed. Blackledge v. Perry, 417 U.S. 21 (1974)(presumption of vindictiveness when prosecutor obtained felony indictment after defendant appealed his misdemeanor conviction); Thigpen v. Roberts, 468 U.S. 27, 33 (1984)(presumption of vindictiveness where defendant prosecuted for manslaughter after appealing his conviction for reckless driving and other misdemeanors).

Even in cases where vindictiveness is not presumed, a showing of "direct" evidence of vindictiveness may be sufficient to support a claim.  An example of such direct evidence would be a specific statement made by a prosecutor "evidencing the vindictive motive."  See e.g., U.S. v. Koh, 199 F.3d 632, 640 (2nd Cir. 1999) (outlining legal standard yet upholding conviction on facts of case); U.S. v. LaPorta, 46 F.3d 152, 161 (2nd Cir. 1994)(same).

**III.    The Facts Support Mr. Awan's Claim of Selective and Vindictive Prosecution and, at a Minimum, Entitle the Defense to Additional Discovery**

The defense asserts that since shortly after September 11, 2001, the government has selectively targeted Mr. Awan for prosecution.  The government, not having any credible information that Mr. Awan was in any way involved in the events of 9/11, secured a material witness warrant and arrested Mr. Awan.  Instead of serving Mr. Awan with a subpoena to testify in front of the grand jury, the government took the extraordinary step of arresting him on October 25, 2001.  See Presentence Investigation Report, p.1, U.S. v. Awan, 01-CR-1328 (S-2)-02 (Attached as Exhibit A).  After holding Mr. Awan several days against his will, the government called Mr. Awan as a grand jury witness on November 5, 2001.  See Grand Jury Transcript, U.S. v. Bin Laden et al., Nov. 5, 2001, as provided in the government's Rule 16 filing dated July 14, 2006 (docket entry 20). Upon testifying honestly in front of the grand jury, Mr. Awan, expecting to be released from the material witness warrant, continued to be held against his will.  Instead of releasing Mr. Awan or charging him with any type of crime related to 9/11 or terrorism, the government formally arrested Mr. Awan on November 6, 2001, apparently pursuant to a credit card fraud complaint.  See U.S. v. Awan, 1:01-mj-01963-ALL, SDNY (docket entries 1-3); see also Exhibit A.

Now, almost five years later in a bout of revisionist history, Special Agent Anthony Jackson of the FBI and John Ross, Investigator at the U.S. Attorneys Office, have, at a minimum,

4

testified that they did not know that Mr. Awan initially was arrested in October of 2001 pursuant

to a material witness warrant.  Instead, their testimony left the clear impression that Mr. Awan

was arrested in October of 2001 for credit card fraud.  The following is the September 18, 2006,

suppression hearing cross-examination of SA Anthony Jackson:

> Q: And you were informed that the interest in Mr. Awan was related to a material-witness warrant; correct?
>
> A:  The only thing I knew about this case was that Mr. Awan was involved in some sort of credit-card scheme, and I was tasked on this day to go and assist on an arrest.

Suppression Hearing, September 18, 2006 (T-18:4-8).

On cross-examination, Investigator John Ross gave the following responses to questions

posed by defense counsel:

> Q: To your knowledge, is it fair to say that Mr. Awan was arrested back in October of 2001 because he was sought by the Government as a potential material witness regarding the World Trade Center attacks[?]
>
> A: No, I wouldn't say that was fair to say.
>
> Q: Was he detained in October of 2001 as a material witness regarding that incident?
>
> A: Yes.
>
> Q:  And, he was held against his will on that material witness warrant, correct?
>
> A: I'm not sure whether he was held against his will or not.

Id. at 49:3-13.

That testimony is flatly contradicted by the government's own motion papers.  In its July

31, 2006, response to Mr. Awan's Motion to Suppress Statements, the government submitted the

following to the Court:

5

On October 25, 2001 the defendant was arrested by the Federal Bureau of Investigation ("FBI") as a material witness in the case of <u>United States v. Bin Laden</u>, an investigation being conducted by the United States Attorneys Office for the Southern District of New York.  The Defendant testified before the Southern District grand jury on November 5, 2001.

On November 5, 2001, a complaint was filed in the Eastern District of New York charging the defendant and two co-conspirators with credit card fraud and related charges.  (<u>United States v. Khalid Awan et al.</u>, 01-M-1761).  The defendant appeared before Magistrate Judge Arelen R. Lindsey on November 14, 2001 and the defendant pled not guilt.  During the defendant's initial appearance, the bail set by the Southern District of New York on the material witness warrant was revoked and the defendant was ordered detained pending trial by Judge Lindsay. (Docket Report, <u>United States v. Khalid Awan et al.</u>, Cr, 01-1328(JS), entry 3).  The defendant was indicted on the credit card charges on December 4, 2001. (<u>Id.</u> at entry 12).

<u>Memorandum of Law in Opposition to Defendant's Motion to Suppress Certain Statements</u>, p.4, July 31, 2006 (docket entry 34).

On March 17, 2003, Mr. Awan, along with his co-defendants, pleaded guilty to one count of a superseding indictment charging conspiracy to commit credit card fraud.  On October 28, 2004, Mr. Awan was sentenced to 60 months in prison.

At the end of January 2006, the government transferred Mr. Awan from Allenwood F.C.I. to MDC-Brooklyn.  On February 17, 2006, the government produced Mr. Awan to a proffer building for interrogation; another interrogation occurred on February 20, 2006.

Interestingly, the government waited until March 8, 2006, to charge Mr. Awan in the instant prosecution, shortly before he was to be released from federal prison.

The initial indictment secured by the government alleged that Mr. Awan was involved in illegal activity from "[i]n or about and between 1998 and November 6, 2001."  Counts Two and Three of the superseding indictment, which was filed on August 1, 2006, involve the same time period; the new Count One time range is "[i]n or about and between 1998 and February 2005."

Although it is not alleged in the Superseding Indictment, the government contends that Mr. Awan is charged with conspiring to provide as well as providing material support to the Khalistan Commando Force ("KCF") and violating a federal money laundering statute.

There are several issues that indicate that the government has leveled a selective and vindictive prosecution against Mr. Awan.

No other defendant similarly situated to Mr. Awan has been charged with providing material support to the KCF, a group formed to realize the nationalist aspirations of the Sikh people of Khalistan.  Mr. Awan is a Canadian citizen of Pakistani origin and Muslim faith.  To the knowledge of defense counsel, no American citizen of Christian faith has ever been charged with providing material support to the KCF.  In fact, defense counsel is not aware of any person of the Sikh faith who has ever been charged with providing material support to the KCF, even though the KCF is a Sikh organization that draws its support from members of the Sikh community.

For instance, the defense has obtained a copy of an indictment filed on February 21, 2006, in the Eastern District of New York against one Gurbax Singh.  The indictment, attached as Exhibit B, clearly indicates that the government believes that Mr. Singh is affiliated with the KCF, an allegation not even made concerning Mr. Awan.  Specifically, the indictment states as follows:

> On or about July 31, 2001, within the Eastern District of New York and elsewhere, the defendant GURBAX SINGH did knowing and intentionally make a false statement under oath, in a matter relating to a law of the United States relating to naturalization and citizenship, in that SINGH completed and signed, under oath, a United States Immigration Naturalization Service form entitled "Application for Naturalization" in which SINGH affirmed that (1) he was not affiliated with any organization or group and (2) he had not given false testimony for the purpose of obtaining an immigration benefit, when in truth and in fact, as SINGH then and there will knew and believed, (1) he was affiliated with the Khalistan

7

> Commando Force and (2) he had given false testimony for the purpose of obtaining an immigration benefit in that (a) on January 23, 1992, he filed, under oath, an Immigration Naturalization Citizenship Service form entitled "Request for Asylum in the United States," in which he failed to report his affiliation with the Khalistan Commando Force as required by the form and in which he fraudulently claimed that he and his family had been subjected to torture and persecution by the Indian government, and (b) on June 5, 1995, he filed, under oath, a completed Immigration Naturalization Service Form I-485 in which he failed to report his affiliation with the Khalistan Commando Force and fraudulently denied ever having been arrested.
>
> (Title 18, United States Code, Sections 1015(a) and 3551 et seq.)

Despite being "affiliated" with the KCF, Mr. Singh is not being charged like Mr. Awan with providing material support or conspiring to provide material support in violation of 18 U.S.C. §§ 2339A(a) and 956(a).  This disparity is even more striking considering that AUSA Lawrence Ferazani, Jr., the lead Assistant U.S. Attorney responsible for prosecuting Mr. Awan, is the same prosecutor who secured the indictment and is handling the prosecution of Gurbax Singh.

The stark contrast between the indictments of Mr. Awan and Mr. Singh is "clear evidence of discriminatory effect and motive."  At a minimum, the contrast is "some evidence of discriminatory effect and intent" entitling the defense to discovery on this issue.

In addition, Count Three of the Superseding Indictment appears to be a reincarnation of the previous fraud prosecution of Mr. Awan, directly implicating double jeopardy.  Because the government has failed to allege any facts in the Superseding Indictment, no clear distinction can be drawn between the previous fraud prosecution and the charge in Count Three.  This unacceptable ambiguity is heightened by the September 18, 2006, suppression hearing testimony of Investigator Ross, who stated the following in response to questions from defense counsel and the Court:

> Q:  The evidence that was obtained regarding Mr. Awan's credit card case is also evidence in the course of your investigation that is being used against Mr. Awan in this case, correct?

8

THE COURT:  Do you know if any items of evidence, physical evidence, that's being used in both cases or not?

THE WITNESS:  Yes.

THE COURT:  What.

THE WITNESS:  There are photos and documents; papers, papers with phone numbers and contact phone numbers that were recovered from Mr. Awan as a result of his arrest that those papers, although they were recovered from the credit card fraud case, had phone numbers and photos of the leader of that Khalistan Commando Force in Pakistan, Paramjit Singh Panjwar.

THE COURT:  Apart from that, do you know of any witnesses that the Government intends to call in this case which would have been called in the other case?

THE WITNESS: No.

(T-74:25-75:18).

This testimony is belied by the government's own 404(b) filing of September 15, 2006 (docket entry 52).  In that filing, the government presented a laundry list of facts and evidence from the previous credit card prosecution that it seeks to introduce at trial against Mr. Awan. The government also explicitly stated that it wants to call a witness who was involved to some degree in criminal acts involved in the previous credit card case, including accepting money to participate in the scheme, failing to withdraw from the scheme, and willfully destroying evidence of the scheme.  Id. at 4-6.  From the facts relayed in the suppression hearing and the government's 404(b) filing, this witness appears to be the person who was identified by SA Jackson as Mr. Mian, who was arrested at 464 Old Country Road with Mr. Awan.  Perhaps Investigator Ross was not aware that the government intends to call Mr. Mian, an alleged key potential fact witness from the first prosecution, at trial, but it does strain believability.

The import is that the government appears to be attempting to deflect an examination into the true motivations and machinations that have led Mr. Awan to face a prosecution that, when first initiated by the March 3, 2006, indictment, squeeked within the statute of limitations just as Mr. Awan was to be released from federal prison. The circumstances evince an overzealous and discriminatory intent and series of actions taken by the government to keep Mr. Awan enmeshed in the federal criminal justice system.

<b>CONCLUSION</b>

Considering the evidence available to the defense at this stage in the case, Mr. Awan asserts that he has set forth a sufficient basis to support dismissal of the indictment based upon selective and vindictive prosecution. At a minimum, Mr. Awan should be entitled to discovery to further substantiate the claim. Mr. Awan respectfully requests that, if the Court is not prepared at this stage to grant the requested relief, the Court permit Mr. Awan to supplement and amend the motion as further discovery and facts are provided by the government to the defense.

Failure to provide the relief requested will violate Mr. Awan's constitutional rights to due process, equal protection, as well as the rights to prepare and present a defense, to be informed of the nature and cause of the accusation against him, and to be free of double jeopardy pursuant to the Fifth and Sixth Amendments.

WHEREFORE, for the reasons stated herein, Mr. Awan respectfully moves the Court to grant the instant motion and to dismiss the Superseding Indictment.

Dated: New York, New York
September 22, 2006

Respectfully Submitted,


_____/S/_____

10

SEAN M. MAHER
SM0037
KHURRUM B. WAHID
*KW9149*
*Counsel for the Defendant Khalid Awan*
Wahid, Vizcaino & Maher LLP
122 E. 42nd Street, Suite 1616
New York, NY 10168
(212) 661-5333
(212) 661-5255 fax