UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

United States of America

                                        CR-06-0154 (CPS)

   - against -                          MEMORANDUM OPINION
                                        AND ORDER

Khalid Awan,
                            Defendant.

----------------------------------------X

SIFTON, Senior Judge.

     On August 1, 2006, defendant, Khalid Awan, was indicted on
(1) one count of conspiring to provide material support and
resources, knowing and intending that such support would be used
in preparation for and in carrying out a conspiracy to murder,
kidnap or maim a person or persons outside of the United States,
in violation of 18 U.S.C. § 2339(A) and 18 U.S.C. § 956(a), (2)
one count of actually providing material support and resources,
knowing and intending that such support would be used in
preparation for and in carrying out a conspiracy to murder,
kidnap or maim a person or persons outside of the United States,
in violation of 18 U.S.C. § 2339(A) and 18 U.S.C. § 956(a), and
(3) one count of knowingly and intentionally transporting,
transmitting and transferring monetary instruments and funds from

a place in the United States to a place outside the United States, with the intention of promoting an offense against a foreign nation, involving murder and destruction of property by means of explosive or fire in violation of 18 U.S.C. § 1956(c)(7)(B)(ii).  Now before the Court are defendant's motions to dismiss the indictment.[1] For the reasons set forth below, defendant's motion is granted with respect to Counts One and Two and denied with respect to Count Three.

## BACKGROUND

The following facts are taken from the indictment, the record of these proceedings and the submissions of the parties in connection with these motions.

*2001 Initial Arrest and Charges*

On October 25, 2001 the government arrested the defendant on a charge of credit card fraud.  He was thereafter detained pursuant to a material witness warrant in connection with the

---

[1] Additional motions relating to this case are pending before this Court, including a motion for discovery; a motion for bill of particulars; a motion for release of *Brady* materials; a motion to suppress evidence; a motion to suppress statements; a motion to exclude government's expert witness; a motion for a *Wade* hearing regarding in court identification of defendant; and a motion to admit 404(b) evidence.

investigation of events of September 11, 2001.  On November 6, 2001 defendant, represented by an attorney, testified before the grand jury as a material witness.  He was not, however, released from custody, but continued to be detained in connection with the charge of credit card fraud.  On November 14, 2001 defendant was arraigned before Magistrate Judge Lindsey and ordered detained pending trial.

Defendant thereafter retained counsel and was indicted on credit card fraud charges on December 4, 2001; a superceding indictment was filed on May 7, 2002.[2]  On March 17, 2003 defendant pleaded guilty to one count of credit card fraud in violation of 18 U.S.C. § 1029.  He was sentenced on October 28, 2004 to sixty months incarceration.  A judgment of conviction was entered on November 8, 2004.

*The Current Indictment*

Defendant was scheduled to be released from his 2004 sentence in March, 2006.  However, on March 8, 2006 he was again indicted.  A superceding indictment was filed August 1, 2006. The three-count indictment superceding reads as follows:

---

[2] The specifics of that indictment are detailed below.

<u>Count One:</u>

In or about and between 1998 and February 2005, both dates
being approximate and inclusive, within the Eastern District
of New York and elsewhere, the defendant KHALID AWAN,
together with others, did knowingly and intentionally
conspire to provide material support and resources, as that
term [sic] is defined in 18 U.S.C. §2339A(b) (2005), knowing
and intending that they were to be used in preparation for,
and in carrying out, a conspiracy to murder, kidnap or maim
a person or persons outside the United States in violation
of Title 18 United States Code, Section 956(a).

<u>Count Two:</u>

In or about and between 1998 and November 6, 2001, both
dates being approximate and inclusive, within the Eastern
District of New York and elsewhere, the defendant KHALID
AWAN did knowingly and intentionally provide material
support and resources, as that term [sic] is defined in 18
U.S.C. §2339A(b) (2005), knowing and intending that they
were to be used in preparation for, and in carrying out, a
conspiracy to murder, kidnap or maim a person or persons
outside the United States in violation of Title 18 United
States Code, Section 956(a).

<u>Count Three:</u>

In or about and between 1998 and November 6, 2001, both
dates being approximate and inclusive, within the Eastern
District of New York and elsewhere, the defendant KHALID
AWAN did knowingly and intentionally transport, transmit and
transfer monetary instruments and funds from a place in the
United States to a place outside the United States with the
intent to promote the carrying on an offense against a
foreign nation involving murder and destruction of property
by means of explosive or fire, in violation of Title 18
United States Code, Section 1956(c)(7)(B)(ii).

The government alleges, in its filings in connection with this motion, that defendant transferred his own money and assisted others in transferring money to the Khalistan Commando Force ("KCF"), a Sikh separatist organization based in Pakistan. Additionally, the government alleges that defendant recruited fellow prison inmates to join the KCF.

Defendant was arraigned on these charges on March 16, 2006 and August 9, 2006.  Trial is scheduled for December, 2006.

**DISCUSSION**

Defendant has filed motions to dismiss the indictment on a variety of grounds discussed seriatim below.[3]

*A. Failure to State an Offense*

1. Counts One and Two[4]

Defendant argues that Counts One and Two fail to allege the essential elements of the "material support" offense.[5]  In

---

[3] A second superceding indictment was filed on October 23, 2006 and defendant has not had an opportunity to address motions to that superceding indictment.

[4] Since Count One alleges a conspiracy to provide material support and Count Two alleges that actual provision of material support, the following discussion applies to both Counts.

[5] In relevant part, the statute on which Counts One and Two are based reads as follows:

> Whoever provides material support or resources . . . knowing or intending that they are to be used in preparation for, or in carrying

particular, he argues that these counts fail to provide the

sufficient factual detail as to what "material support or

resources" defendant provided and at what times; since the

statute enumerates several different types of conduct which are

each defined as material support, defendant contends that the

level of detail provided in the indictment does not give adequate

notice of the charges.[6]

In general, "an indictment is sufficient if it, first,

contains the elements of the offense charged and fairly informs a

defendant of the charge against which he must defend, and,

---

out, a violation of section . . . 956 . . . of this title . . . or . . .
conspires to do such an act, shall be fined under this title, imprisoned
not more than 15 years, or both, and, if the death of any person
results, shall be imprisoned for any term of years or for life.

18 U.S.C. § 2339A(a).

The term "material support" is defined as follows:

[A]ny property, tangible or intangible, or service, including currency
or monetary instruments or financial securities, financial services,
lodging, training, expert advice or assistance, safehouses, false
documentation or identification, communications equipment, facilities,
weapons, lethal substances, explosives, personnel (1 or more individuals
who may be or include oneself), and transportation, except medicine or
religious materials

18 U.S.C. § 2339A(b)(1). The information in the parenthetical was added in
2004, as was the introductory phrase "any property, tangible or intangible, or
service."

[6] Defendant further notes a concern with regards to the changes in the
statutory definition of "material support" during the relevant time period,
arguing that defendant could be convicted for types of "material support" not
within the definition at the time the alleged conduct was performed. It will,
of course, be the government's burden at trial to prove that defendant
committed acts which constituted crimes at the time he committed them.

second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. U.S.*, 418 U.S. 87, 117 (1974). The courts of this circuit "have consistently upheld indictments that do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000) (internal citations and quotations omitted).

However, recital of the statutory language is not enough under all circumstances. To comply with the protections of the Fifth and Sixth Amendments, an indictment must contain sufficiently specific facts to provide the defendant "with reasonable certainty, of the nature of the accusation against him" so that he knows "what he must be prepared to meet." *Russell v. U.S.*, 369 U.S. 749, 764-65 (1962) (internal citations and quotations omitted). In addition, the indictment must be framed to "ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury." *Pirro*, 212 F.3d at 92 (internal citations and quotations omitted). As the Supreme Court noted in *Russell*:

> To allow the prosecutor, or the court, to make a
> subsequent guess as to what was in the minds of the
> grand jury at the time they returned the indictment
> would deprive the defendant of a basic protection which

[the] . . . grand jury was designed to secure.  For a
defendant could then be convicted on the basis of facts
not found by, and perhaps not even presented to, the
grand jury which indicted him.

*Russell*, 369 U.S. at 770.  These concerns are heightened when the

statute in question uses generic terms to categorize a variety of

different activities each proscribed in the statute; in that

case, "it is not sufficient that the indictment shall charge the

offence [sic] in the same generic terms as in the definition; but

it . . . must descend to particulars." *Pirro*, 212 F.3d at 93

(internal citations and quotations omitted); *see also Russell*,

369 U.S. at 765 (internal citations and quotations omitted)

(stating that "[u]ndoubtedly, the language of the statute may be

used in the general description of an offense, but it must be

accompanied with such a statement of the facts and circumstances

as will inform the accused of the specific offense, coming under

the general description, with which he is charged"); 1 Wright,

Federal Practice and Procedure § 125 (2006) ("[i]f the statute is

couched in general terms, the indictment must particularize the

offense sufficiently to inform the defendant of the accusation he

must meet").

Here, the indictment uses the generic expression "material

support," as defined in 18 U.S.C. § 2339A(b), without specifying

which of a variety of activities, any one of which would be criminal, that the defendant must defend against or which the grand jury considered.  The government has indicated in its papers on this motion that it plans to prove that defendant provided "money," referring presumably to "currency or monetary instruments or financial securities," and "personnel," referring to "1 or more individuals who may or may not include [the defendant]", to the KCF.  However, there is no way of knowing whether the grand jury considered both categories (or, for that matter, either) of those activities under the general heading of material support.[7] *See U.S. v. Crowley,* 79 F.Supp.2d 138, 159 (E.D.N.Y. 1999) (*rev'd on other grounds*) (dismissing an indictment which referred to "sexual conduct" on the grounds that such conduct could refer to any or all of the acts specifically defined in the statute and finding that "[g]iven the variety of ways in which this statute could be violated, the conduct alleged to comprise the charged "sexual act" must be delineated in the indictment").

Although the defendant argues that the allegations in Counts One and Two regarding the objectives of the alleged 18 U.S.C. §

---

[7] For similar reasons, the error cannot by 'cured' by a bill of particulars or statement in papers on this motion since those filings will not reveal what the grand jury found.

956[8] conspiracies to commit murder, maiming or kidnapping are also deficient, for similar reasons that argument must be rejected with the exception of the allegation of "murder."[9] Here, without any specific allegations about the alleged incident, the fact that murder under 18 U.S.C. § 1111 includes both first and second degree murder means that one cannot be certain as to the basis of the grand jury's action.[10]  Otherwise, the presumption of regularity gives confidence that each those

---

[8] The statute on which this aspect of the charges is based reads, in relevant part:

> Whoever, within the jurisdiction of the United States, conspires with one or more other persons, regardless of where such other person or persons are located, to commit at any place outside the United States an act that would constitute the offense of murder, kidnapping, or maiming if committed in the special maritime and territorial jurisdiction of the United States shall, if any of the conspirators commits an act within the jurisdiction of the United States to effect any object of the conspiracy, be punished as provided in subsection (a)(2).

18 U.S.C. § 956(a)(1).

[9] The statute on which this aspect of the charges is based reads, in relevant part:

> Whoever, within the jurisdiction of the United States, conspires with one or more other persons, regardless of where such other person or persons are located, to commit at any place outside the United States an act that would constitute the offense of murder, kidnapping, or maiming if committed in the special maritime and territorial jurisdiction of the United States shall, if any of the conspirators commits an act within the jurisdiction of the United States to effect any object of the conspiracy, be punished as provided in subsection (a)(2).

18 U.S.C. § 956(a)(1).

[10] If the government seeks to reindict, it would be well advised to specify the degree of murder which the grand jury considered or provide sufficient facts so that the murder alleged can be identified.

alternatives was considered by the grand jury and as a result, a repetition of the language of the statute is enough.

For the forgoing reasons, the indictments on Counts One and Two must be dismissed, without prejudice to the government's re-presentment of the matter to the grand jury

2. Count Three

The analysis set forth above does not apply to Count Three. In Count Three, there is no generic statutory term encompassing a list of possible criminal acts left unspecified in the indictment.  The defendant, the trial jury and the Court are not left to guess what objectives (murder and/or destruction of property) are alleged to have been sought by what means (explosives and/or fire).  Here, the general rule that an accusation tracking the statutory language is sufficient to give notice, protect against double jeopardy and assure consideration by the trial jury of the same accusation made in the grand jury

applies.[11]  Count Three of the indictment accordingly meets the minimal standards of pleading.

*B. Vagueness and Overbreadth*

Defendant puts forth several arguments addressed to the alleged vagueness and overbreadth of the statutes on which the charges are based.[12]

1. Section 2339A(a) – Definition of Material Support

a) Due Process Vagueness

"[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and

---

[11] The statute on which this charge is based reads, in relevant part:

> Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States . . . with the intent to promote the carrying on of . . . murder, kidnapping, robbery, extortion, destruction of property by means of explosive or fire, or a crime of violence.

18 U.S.C. § 1956(a)(2).

[12] A statute may be challenged as facially overbroad if has a chilling effect on expression that is protected under the First Amendment.  A statute may be unconstitutionally vague, as-applied or facially, on Due Process grounds, if it lacks sufficient clarity to give notice as to what type of activity is prohibited and what the minimal standards are for law enforcement.

discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). This doctrine "is a component of the right to due process," though vagueness "is particularly troubling when First Amendment rights are involved" and the "doctrine demands a greater degree of specificity [when First Amendment rights are potentially implicated] than in other contexts." *Farrell v. Burke*, 449 F.3d 470, 485 (2d Cir. 2006) (internal citations and quotations omitted); see also *Grayned v. City of Rockford,* 408 U.S. 104, 109 (1972) (where a penal law "abut(s) upon sensitive areas of basic First Amendment freedoms [and] operates to inhibit the exercise of (those) freedoms" which would lead people to "steer far wider of the unlawful zone," it may be void-for-vagueness) (internal citations and quotations omitted).

1) Section 2339A(a) Vagueness - As-Applied[13]

Courts should evaluate as-applied challenges before considering facial challenges. *Farrell*, 449 F.3d 470 at 485. In making his claim that 18 U.S.C. § 2339A is unconstitutionally vague, defendant relies on series of cases in which various of

_____

[13] Defendant's papers are ambiguous as to whether he is making a facial or as-applied challenge to § 2339A(a). Though in certain places defendant says that he is making an "as-applied" challenge, other language suggests that he is challenging the statute on broader grounds. For the sake of clarity, all the potential arguments are here addressed.

the expressions found in § 2339A(b), including "personnel,"[14] were determined to be unconstitutionally vague.

In the Humanitarian Law Project (*HLP*) cases from the Ninth Circuit,[15] individuals and organizations wishing to provide support to the humanitarian and political activities of groups designated as "foreign terrorist organizations" challenged the constitutionality of 18 U.S.C. § 2339B.[16] Among other activities, the plaintiffs wished to advocate for these groups before the United Nations, train members of the groups in political advocacy and distribute literature supportive of these groups. The district court in *HLP I* found that the expressions "personnel" and "training" were void-for-vagueness because they failed "to allow persons of ordinary intelligence to determine what type of training or provision of personnel is prohibited" and "appear[ed] to prohibit activity protected by the First Amendment." *HLP I*, 9 F.Supp.2d at 1204; *see also U.S. v. Sattar,*

---

[14] None of the cases cited by defendant discuss the terms "currency or monetary instruments or financial securities."

[15] *Humanitarium Law Project v. Reno,* 9 F.Supp.2d 1176, 1203 (C.D.Cal. 1998) ("*HLP I*") (discussing "personnel" and "training"); *Humanitarian Law Project v. Reno*, 205 F.3d 1130, 1137 (9th Cir. 2000) ("*HLP II*") (affirming *HLP I*); *Humanitarian Law Project v. Ashcroft*, 309 F.Supp.2d 1185, 1200 (C.D.Cal. 2004) ("*HLP IV*") ("expert advice and assistance"); *Humanitarian Law Project v. Gonzales*, 380 F.Supp.2d 1134 (C.D.Cal. 2005) ("*HLP V*").

[16] In relevant part, § 2339B(a)(1) reads: "Whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so . . . ." Section 2339B incorporates the definitions of material support found in § 2339A(b).

314 F.Supp.2d 279, 300-01 (S.D.N.Y. 2004) ("*Sattar II*") (discussing the *HLP* cases). This position was affirmed in *HLP II*.[17] In this circuit, Judge Koeltl in *U.S. v. Sattar*, 272 F.Supp.2d 348, 361 (S.D.N.Y. 2003) ("*Sattar I*") came to a similar conclusion. The defendants in *Sattar I*, one of whom was a lawyer representing the leader of an alleged terrorist group, were charged with, among other things, providing "personnel" to terrorists. The court struck down that indictment on vagueness grounds since the government failed to "explain how a lawyer, acting as an agent of her client, an alleged leader of [a terrorist organization], could avoid being subject to criminal prosecution" and thus failed to provide "notice to persons of ordinary intelligence" as to the conduct prohibited. *Id.* at 360. The court further noted the government's "evolving definition" over the course of the hearings raised the concern of standardless government action.[18] *Id.* In *Sattar II*, Judge Koeltl noted that his concern in *Sattar I* was with First Amendment issues since "the statute provided no means to distinguish providing oneself to an organization from [constitutionally

---

[17] In *HLP IV*, the court found that defendants "failed to adequately distinguish the provision of 'expert advice or assistance' from the provision of training or personnel." 309 F.Supp.2d at 1200 (internal quotations omitted).

[18] The court expressed similar concerns with regards to the use of "communications equipment," another statutory term used in the indictment. *Sattar I*, 272 F.Supp.2d 348 at 357-58.

protected] . . . membership in the organization." 314 F.Supp.2d at 296. Specifically, "§ 2339B's ban on providing personnel to a foreign terrorist organization could trench upon associational and expressive freedoms" and "was particularly problematic as applied to the conduct of persons allegedly providing themselves as personnel to the organization." *Id.* at 300 (internal quotations omitted).[19]

However, as the court in *Sattar II* pointed out, defendant's reliance on these cases is "misplaced" when applied to the situation presented by the current charges. *Id.* In the *HLP* and *Sattar I* cases, the courts were protecting defendants whose activities were engaged in without any specific knowledge or intent apart from engaging in the activities themselves. As such, the activities could include many protected by the First Amendment. Here, however, the defendant is charged with providing funds and recruits knowing they are to be used to further a conspiracy to commit violence, acts unprotected by the freedom of expression or association. *See Sattar II*, 314 F.Supp.2d at 301 (the First Amendment provides no protection to someone who knowingly provides resources for crimes of violence).

---

[19] To be sure, other cases have found "personnel" in the context of § 2339B not vague as-applied. *See U.S. v. Marzook,* 383 F.Supp.2d 1056, 1066 (N.D.Ill. 2005) (citing cases).

Since "[t]he allegations . . . do not concern the scope of membership in an organization or the permissible extent of advocacy" as applied to the defendant, there is no concern that any First Amendment rights are being chilled. *Id.* at 301.

The statutory text of § 2339A(a), the source of the substantive crime in the present case, provides in other words greater precision about the content and scope of the activity prohibited by § 2339B so that anyone of "ordinary intelligence" would understand Mr. Awan's alleged activities to be prohibited. *Farrell*, 449 F.3d at 486. In contrast to § 2339B, which broadly criminalizes the provision of any "material support" to any group known to be a foreign terrorist organization, § 2339A(a) raises the scienter requirement and criminalizes only provision of material support "*knowing or intending that they be used in preparation for, or in carrying out*" certain specific crimes (emphasis added). As a result, "it is plain . . . what conduct the statute proscribes." *Sattar II*, 314 F.Supp.2d at 303-04; *see also U.S. v. Strauss,* 999 F.2d 692, 698 (2d Cir. 1993) (finding that a "scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice") (internal quotations and citations omitted). Nor does such a detailed statute raise the specter of arbitrary enforcement since it

explains with "sufficient definiteness what is prohibited, and the specific intent that is required, so that enforcement of the statute is not left to the arbitrary and discriminatory choices of law enforcement officials." *Sattar II*, 314 F.Supp.2d at 303; *see also Farrell*, 449 F.3d at 494 (finding no arbitrary enforcement in a situation where no reasonable law enforcement officer would have doubted that the defendant's activities were prohibited by statute). As such, the statute is not vague-as-applied to Mr. Awan's alleged activities.

2) Section 2339A(a) Vagueness - Facial

Even if a statute is not vague as-applied to a defendant, in certain circumstances the statute may be challenged as facially vague. For facial challenges which do *not* implicate First Amendment protected conduct, two different approaches have been endorsed by courts: (1) whether the statute is "unconstitutionally vague as applied to all circumstances" or (2) whether, even though there may be some circumstances in which the statute can be validly applied, it "is permeated with vagueness," which may require a finding "that it infringes on a constitutional right and has no mens rea requirement." *U.S. v. Rybicki,* 354 F.3d 124, 131 (2d Cir. 2003) (discussing the

alternative standards) (internal citations and quotations omitted); *see also Inturri v. City of Hartford, Conn.*, 365 F.Supp.2d 240, 253 n. 13 (D.Conn. 2005) (evaluating the statute at issue under both standards, noting that the Second Circuit has yet to decide which standard to apply).[20]

On all events, the fact that the statute is not vague as-applied to the defendant in this case, makes it clear that the statute is not vague in every circumstance.  Nor is the statute permeated by vagueness.  In *City of Chicago v. Morales,* 527 U.S. 41 (1999), the Supreme Court discussed the "permeated" standard in evaluating a loitering statute aimed at countering gang activity, defined loitering as "to remain in any one place with *no apparent purpose.*" *Id.* at 47 n.2 (emphasis added).  In finding the statute permeated with vagueness, the plurality opinion noted that the statute failed to include any *mens rea* requirement and implicated constitutionally protected conduct. *Id.* at 55.  The opinion further noted that under the statute, "no standard of conduct is specified at all" - a citizen would have no way of knowing if they indeed had an "apparent purpose" and no guidelines were provided to law enforcement. *Id.* at 60, 63-64.

---

[20] There are very few federal cases which even reference the "permeated" standard.

In contrast, § 2339A(a)'s scienter requirement makes clear both what is illegal and what intent a suspect must possess before his activities are defined as criminal. Any vagueness which may exist inhabits only peripheral applications of the statute. *See Doctor John's, Inc. v. City of Roy*, No. 04-4270, 2006 WL 2867993, at *4 (10th Cir. Oct. 10, 2006) (under *Morales*, a law must at a minimum be "vague in the vast majority of its applications" to be facially vague). Section 2339A(a) is accordingly not facially vague under either of these standards.

b) First Amendment Overbreadth

While ordinarily a defendant against whom a statute has been lawfully applied may not challenge the application of the statute to other potential parties, "[t]he First Amendment doctrine of substantial overbreadth is an exception to the general rule." *Massachusetts v. Oakes,* 491 U.S. 576, 581 (1989).

However, "[b]ecause of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished . . . [the Supreme Court has] recognized that the overbreadth doctrine is 'strong medicine' and [has] employed it with hesitation, and then only as a last resort." *Los Angeles Police Dept. v. United Reporting Pub. Corp*., 528 U.S. 32,

39 (1999) (internal citations and quotations omitted). "[T]he overbreadth of a statute must not only be real, but *substantial* as well, judged in relation to the statute's plainly legitimate sweep," especially where the behavior being regulated is on its face conduct and not speech. *Broadrick v. Oklahoma,* 413 U.S. 601, 615 (1973) (emphasis added). To succeed with an overbreadth claim, the claimant "bears the burden of demonstrating, *from the text of the law and from actual fact*, that substantial overbreadth exists." *Virginia v. Hicks*, 539 U.S. 113, 122 (2003) (internal citations and quotations omitted) (emphasis added).

The primary goal of § 2339A(a) is to prohibit "the provision of material support or resources knowing or intending they are to be used in preparation for, or in carrying out, a violation of certain enumerated federal crimes," undoubtably a legitimate exercise of Congress' power to criminalize "harmful, constitutionally unprotected conduct." *Sattar II*, 314 F.Supp.2d at 305 (rejecting an overbreadth claim for failing to demonstrate "that § 2339A, on its face or in actual fact, prohibits any constitutionally protected expression, much less that any possible overbreadth is 'substantial' when judged in relation to the statute's plainly legitimate sweep"). The defendant here has also failed to describe any situation in which even an

insubstantial amount of speech may be restrained because of §

2339A(a) and cites no case law in which this statute (or § 2339B)

has been found overbroad.[21]  The focus of § 2339A(a) is on the

prohibition of *acts* which assist in the furtherance of criminal

activities, not expression, and it is not apparent how a

reasonable person might read the statute to incorporate protected

expression as well.  Accordingly, the overbreadth challenge

fails.[22]


2. Section 2339A(a) - Knowing or Intending

　　　Defendant next argues, while acknowledging that other courts

have found it adequate, that the "knowing or intending" standard

in § 2339A(a) is unconstitutionally vague since it allows for

"conviction based on knowledge without criminal intent" and thus

---

[21] Both the *Sattar I* court and the *HLP* court which found § 2339B
unconstitutionally vague rejected overbreadth claims on the grounds that the
parties had failed to establish that the prohibitions were substantially
overbroad. *Sattar I*, 272 F.Supp.2d  at 362; *HLP V*, 380 F.Supp.2d at 1153.

[22] A recent Second Circuit decision notes two distinct, though similar,
categories of facial First Amendment challenges, one being First Amendment
Overbreadth, and the other being First Amendment Vagueness. *See Farrell*, 449
F.3d at 496; *but see Village of Hoffman Estates v. Flipside, Hoffman Estates,
Inc.*, 455 U.S. 489, 495 n.6 (1982) ("the vagueness of a law affects
overbreadth analysis"); *Rybicki*, 354 F.3d at 130-31  ("where First Amendment
overbreadth analysis is not available, a statute will be held
unconstitutionally vague 'on its face' only if it is unconstitutionally vague
'as applied' to all circumstances.").  However, even if the defendant here is
asserting "First Amendment vagueness" as an independent facial attack, he
still fails to show how the statute would chill "a substantial amount of
constitutionally protected conduct." *Farrell*, 449 F.3d at 496.

"fall[s] short of constitutional requirements." *See Sattar II*,
314 F.Supp.2d at 301 (regarding § 2339A(a)'s scienter
requirement); *see also U.S. v. Figueroa*, 165 F.3d 111, 115 n.3
(2d Cir. 1998)([t"]he types of mental states required for
criminal convictions range from purposefulness (or intention) to
knowledge, recklessness or negligence"); *U.S. v. Sanders,* 211
F.3d 711, 723 (2d Cir. 2000)(noting that intent is not a required
element of a crime and that "knowledge may suffice for criminal
culpability if extensive enough to attribute to the knower a
'guilty mind,' or knowledge that he or she is performing a
wrongful act") (internal citations and quotations omitted). Since
defendant presents no argument why prior precedent should be
rejected, there is no cause to find the scienter requirement of
this statute unconstitutional.

3. Section 956

a) Vagueness[23]

Defendant also argues that the terms "murder" and "maim,"
elements of a § 956 conspiracy, are vague, since they provide no

---

[23] To the extent that defendant argues that the *indictment* is not sufficiently
specific with regards to the details of the alleged conspiracy, and in
particular, whether defendant is being charged with murder, maiming or
kidnapping, that is addressed above in connection with his motion to dismiss
for failure to state an offense.

definition of the criminal behavior prohibited.  The claim is

without any merit.  The statute states that the act must

constitute murder or maiming that would be illegal if "committed

in the special maritime and territorial jurisdiction of the

United States."  18 U.S.C. § 956(a).  Each of these terms is

defined in 18 U.S.C. § 1111(a) (murder)[24] and 18 U.S.C. § 114

(maiming)[25] and include specific scienter requirements.[26]  A

---

[24] The statute reads, in relevant part:

> Murder is the unlawful killing of a human being with malice
> aforethought. Every murder perpetrated by poison, lying in wait,
> or any other kind of willful, deliberate, malicious, and
> premeditated killing; or committed in the perpetration of, or
> attempt to perpetrate, any arson, escape, murder, kidnapping,
> treason, espionage, sabotage, aggravated sexual abuse or sexual
> abuse, child abuse, burglary, or robbery; or perpetrated as part
> of a pattern or practice of assault or torture against a child or
> children; or perpetrated from a premeditated design unlawfully and
> maliciously to effect the death of any human being other than him
> who is killed, is murder in the first degree. Any other murder is
> murder in the second degree.

18 U.S.C. § 1111(a).

[25] The statute reads:

> Maiming within maritime and territorial jurisdiction. Whoever,
> within the special maritime and territorial jurisdiction of the
> United States, and with intent to torture (as defined in section
> 2340), maim, or disfigure, cuts, bites, or slits the nose, ear, or
> lip, or cuts out or disables the tongue, or puts out or destroys
> an eye, or cuts off or disables a limb or any member of another
> person; or

> Whoever, within the special maritime and territorial jurisdiction
> of the United States, and with like intent, throws or pours upon
> another person, any scalding water, corrosive acid, or caustic
> substance--

> Shall be fined under this title or imprisoned not more than twenty
> years, or both.

defendant clearly is given sufficient notice of the conduct proscribed by those terms and the *mens rea* which is required.

b) Overbreadth

Defendant states in his papers that § 956 is "Unconstitutionally Vague and Overbroad as Applied to Mr. Awan." Presuming that the defendant means to argue that § 956 is both facially overbroad as well as unconstitutionally vague, he has made no showing that § 956 in any way chills protected free expression in pursuit of the statute's legitimate goal of criminalizing conspiracies which further the commission of a crime in another country. *See U.S. v. Elliott*, 266 F.Supp. 318, 323-24 (S.D.N.Y. 1967) (discussing § 956 and noting that the "Federal Government's power over foreign affairs . . . comprises [the power] to prohibit any disturbance or interference with external affairs," which includes situations in which the ultimate crime, "if consummated would have escaped the criminal law of this nation") (internal citations and quotations omitted). Moreover, courts have consistently held that conspiracy statutes criminalize acts, not thought, and do not implicate the First

---

18 U.S.C. § 114.

[26] Though defendant does not discuss kidnapping in his argument, I note that it too is defined in 18 U.S.C.A. § 1201.

Amendment. *See U.S. v. Shabani*, 513 U.S. 10, 16 (1994) ("the criminal agreement itself is the *actus reus*" of conspiracy); *U.S. v. Pulido*, 69 F.3d 192, 209 (7th Cir. 1995) ("Congress, by making the act of conspiracy to distribute controlled substances unlawful, has neither criminalized private thoughts nor invaded the sphere protected by the First Amendment"); *United States v. Jeter,* 775 F.2d 670, 678 (6th Cir.1985) ("criminal communication in a conspiracy . . . has been traditionally found undeserving of any First Amendment protection"); *U.S. v. Spock*, 416 F.2d 165, 174 n.2 (1st Cir. 1969) ("[t]he fact that a seemingly normal criminal statute, by virtue of its prohibition of conspiracy and crime counselling, may in some instances apply to affect freedom of association or freedom of speech does not invalidate the statute"); Note, *The First Amendment Overbreadth Doctrine*, 83 Harv.L.Rev. 844, 860 (1970) ("the activities affected by conspiracy laws . . . in the great run of situations bear no colorable claims to First Amendment protection"). This is particularly the case with regards to 18 U.S.C. § 956, which makes it a crime to conspire to commit other crimes and facially has nothing to do with speech at all. In the absence of any showing as to the type of privileged communication that may be

chilled under this statute, defendant's motion to dismiss on this ground is denied.

4. Section 1956

a) Vagueness

Defendant argues that the use of the word "involving" in 18 U.S.C. § 1956(c)(7) ("an offense against a foreign nation involving . . . murder [or] . . . destruction of property") demonstrates that the offenses of murder and destruction of property are simply elements of a larger, undefined offense, and that the failure to provide defendant with notice of that undefined offense renders the statute (and the indictment) unconstitutionally vague.[27]

An "offense against a foreign nation" refers to offenses which are "prohibited under the law of the foreign nation in which it is committed." *U.S. v. One 1997 E35 Ford Van, VIN 1FBJS31L3VHB70844,* 50 F.Supp.2d 789, 802 (N.D.Ill. 1999). The phrase "intent to promote the carrying on of an offense against a foreign nation involving murder . . ." accordingly means that the defendant intended to aid an activity in a foreign country which

---

[27] There is no federal case law which similarly challenges the use of the term "involving" followed by a series of specific crimes.

has as a necessary consequence murder or destruction of property as defined in the country referred to.[28]

### c) Overbreadth

As in the case of § 956, defendant makes no showing how § 1956(a)(2)(A) would infringe on protected conduct but simply states that it is "Unconstitutionally . . . Overbroad as Applied to Mr. Awan." Since the statute simply prohibits the act of transporting funds across U.S. borders with the intent of promoting specified criminal activities, it criminalizes unprotected conduct with no apparent impact on free expression.[29] Accordingly, the motion to dismiss on this ground is denied.

## C. Multi-Level Inchoate Offenses

---

[28] The relevant definition of the word involving in this context is "[t]o contain as a part; include" or "[t]o have as a necessary feature or consequence," as in, the government must prove that some action against the foreign country included or featured murder, destruction of property, etc. under the laws of that country. THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (3d ed.), http://dictionary.reference.com/browse/involving (last visited October 26, 2006).

[29] There is no case on record in which a federal court explicitly deals with a challenge to § 1956(a)(2) as overbroad. But see U.S. v. Awan, 966 F.2d 1415, 1423 (11th Cir. 1992) (Circuit court noting that district court dismissed a challenge to parts (a)(1)(B) and (a)(2)(B) as "unconstitutionally vague and overbroad as applied" without explaining any of the factors in that decision).

Defendant argues that the indictment improperly charges multi-level inchoate offenses,[30] namely, in Count One, a conspiracy to prepare to commit a conspiracy and in Count Two, preparing to conspire.[31]  However, the government at oral argument made clear that defendant is not being charged with a conspiracy to conspire or a conspiracy to prepare to conspire but only with providing support to an existing conspiracy.  The defendant is not being charged with being a member of the conspiracy to murder, kidnap or maim.  He is simply alleged to have completed the offense of conspiring to and actually providing material

---

[30] An Inchoate offense is one in which a party takes "a step toward the commission of another crime, the step in itself being serious enough to merit punishment." BLACK'S LAW DICTIONARY 1111 (8th ed. 2004).  The inchoate crimes include conspiracy, attempt and solicitation. *Id.*

[31] Defendant cites extensively from Ira Robbins, *Double Inchoate Crimes*, 26 Harv. J. on Legis. 1 (1989) ("Robbins").  The article notes a handful of federal cases which found certain double inchoate crimes impermissible on due process or logical grounds, and in particular attempted conspiracy. *See U.S. v. Murrell,* 633 F.2d 219 (6th Cir. 1980); *U.S. v. Meacham,* 626 F.2d 503, 509 (5th Cir. 1980) (noting, in dicta, that a crime charging attempt to conspire would be "inane"); *U.S. v. Yu-Leung,* 51 F.3d 1116, 1122 n.3 (2d Cir. 1995) (attempted conspiracy is "a creature unknown" to federal law).  On the other hand, federal courts generally have upheld conspiracies to attempt. *See U.S. v. Mowad,* 641 F.2d 1067, 1075 (2d Cir. 1981); *U.S. v. Clay,* 495 F.2d 700, 710 (7th Cir. 1974); Robbins at 62 ("federal law clearly makes valid the double inchoate crime of a conspiracy to attempt").  More recently, the Fourth Circuit, in *U.S. v. Khan,* 461 F.3d 477, 493 (4th Cir. 2006), noted that there is nothing unusual about having one conspiracy "serve as the predicate for another conspiracy" where the two conspiracies are distinct offenses.  The court further found that § 2339a, which authorizes a charge of conspiracy to provide material support intending that it be used to carry out a violation of § 956 (which is itself a conspiracy statute), expressly permits the use of the underlying § 956 conspiracy "as predicate[] for the overarching conspirac[y] alleged." See Robbins at 62 (noting that one of the criticisms of double inchoate offenses is the lack of express legislative intent).  Thus, even if the defendant here were being charged in the § 956 conspiracy, there would be no basis for concern.

support to carry out such a conspiracy. *See also Sattar II,* 314 F.Supp.2d at 306. For this reason, defendant's motion on these grounds is denied.

## D. Statutory Basis for Conspiracy in Count One

Defendant notes that no independent conspiracy statute is cited in the first count as is customary with allegations involving 18 U.S.C. § 371 conspiracies. However, the government correctly points out that § 2339A(a) contains within it language authorizing a conspiracy charge: "or attempts or conspires to do such an act." As such, there was no need to refer to a second statute and the motion to dismiss on these grounds must be denied.

## E. Duplicitous Nature of Count One

A indictment may be impermissibly duplicitous if (1) it charges two or more distinct crimes in a single count, in violation of Federal Rules of Criminal Procedure, Rule 8(a),[32] and

---

[32] The rule reads as follows:

The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged--whether felonies or misdemeanors or both--are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Federal Rules of Criminal Procedure, Rule 8(a).

(2) the defendant is prejudiced thereby. *U.S. v. Aracri,* 968 F.2d
1512, 1518 (2d Cir. 1992); *U.S. v. Sturdivant,* 244 F.3d 71, 75
(2d Cir. 2001).  Defendant argues that because Count One charges
a violation of two statutory provisions, § 2339A and § 956, it
violates this rule, and runs the risk of creating "issues of
confusion, pretrial notice, and jury compromises," including
convictions in which a jury has not unanimously agreed or
complications with respect to a subsequent double jeopardy
defense. *U.S. v. Moloney,* 287 F.3d 236, 240 (2d Cir. 2002); *see
also Aracri,* 968 F.2d at 1518.

However, the rule has never been interpreted to prohibit an
indictment from citing two crimes in a single count where a crime
is an element of the crime charged. *See U.S. v. Parker*, 165
F.Supp.2d 431, 450 (W.D.N.Y. 2001) ("[t]o assert that an element
of a crime is a separate offense merely because it incorporates a
common law crime does not make the element itself an offense
which may be separately charged in an indictment.  Rather, it
remains an element . . . "); CJS INDICTMENT § 148 ("[a]s a
general rule, an indictment or information must not in the same
count *charge* the accused with the commission of two or more
distinct and substantive offenses, and if it does so it is bad
for duplicity" (emphasis added)).  In the present case, Count One

does not allege that the defendant violated any statute other than § 2339A.  As noted above, Count One does not charge the defendant himself with a violation of § 956; rather, the existence of a § 956 conspiracy is an element the government must prove in order to establish an offense under § 2339A.  Nor is the defendant prejudiced by the charge as currently presented.  He has notice of the charge against him and the jury will be instructed to ensure that the defendant may be convicted only on a unanimous decision that the prosecution has established each of the essential elements of a § 2339A offense.  Accordingly, the motion to dismiss is denied.

## F. Selective Prosecution

Courts are wary of claims of selective prosecution, as they tend to interfere with prosecutorial discretion.  "In the ordinary case, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *U.S. v. Armstrong,* 517 U.S. 456,464 (1996) (internal citations and quotations omitted).  However, "the decision whether to prosecute may not be based on an unjustifiable

standard such as race, religion, or other arbitrary classification." *Id*.  In order to overcome the presumption that a prosecutor has not violated equal protection and sustain a claim of selective prosecution, a criminal defendant must present "clear evidence" that the prosecution had "a discriminatory effect and . . . was motivated by a discriminatory purpose." *Id*. at 465.  "Such purpose may . . . be demonstrated through circumstantial or statistical evidence." *U.S. v. Alameh,* 341 F.3d 167, 173 (2d Cir. 2003) (internal citations and quotations omitted).

Moreover, a defendant seeking discovery on the issue of selective prosecution must at least produce "some evidence that similarly situated defendants of other races could have been prosecuted, but were not." *Alameh,* 341 F.3d at 174 (citing to *Armstrong,* 517 U.S. at 458 and noting that "[t]he Court did not decide the question of what showing of discriminatory intent sufficed to support discovery").

Defendant here makes no showing which entitles him to either a finding of selective prosecution or discovery on the issue. Defendant's claim that no American citizen of Christian faith, unlike the defendant, who is a Canadian citizen of Muslim faith, has ever been prosecuted for supporting the KCF falls well short

of establishing that similarly situated non-citizen defendants or defendants of other faiths could have been prosecuted but were not. *See U.S. v. Fares,* 978 F.2d 52, 59 (2d Cir. 1992) ("[m]ere assertions and generalized proffers on information and belief are insufficient"). Defendant's separate claim that no Sikh citizen has ever been prosecuted for material support of the KCF is factually incorrect. Though defendant cites the case of Gurbax Singh, a Sikh who was allegedly a member of the KCF, Gurbax Singh in fact pled guilty before the undersigned to an information containing language almost identical to that of the current indictment and charging him with material support under § 2339A. Defendant offers no other evidence that similarly situated individuals of other races could have been prosecuted but were not. Accordingly, the motion to dismiss is denied as is the request for discovery on these grounds.

## *G. Vindictive Prosecution*

Defendant next contends that he is the victim of vindictive prosecution. A prosecutor cannot vindictively make a decision to prosecute in retaliation for a defendant's exercise of his legal rights, such as the right to appeal. *Blackledge v. Perry,* 417 U.S. 21, 28 (1974); *U.S. v. White*, 972 F.2d 16, 19 (2d Cir.

1992).  In certain situations, a rebuttable presumption of vindictiveness will arise "when the circumstances of the case create a realistic likelihood of prosecutorial vindictiveness." *U.S. v. Johnson,* 171 F.3d 139, 141 (2d Cir. 1999) (internal citations and quotations omitted) (finding that the presumption was not applicable where the government brought new, unrelated charges after defendant made a jury demand and was acquitted on the original charges); *see also U. S. v. Goodwin*, 457 U.S. 368, 384 (declining to find a presumption of vindictiveness where the defendant declined to plead guilty to a misdemeanor and the government subsequently prosecuted him on felony charges).

Here, the defendant has presented no evidence that he has exercised any legal right for which the government may be retaliating. See *U.S. v. Ullah,* No. 04-CR-30A(F), 2005 WL 629487, at *27 (W.D.N.Y. March 17, 2005) (dismissing a claim of presumptive vindication because defendant "fail[ed] to articulate any facts which, if true, would establish the requisite 'but for' causal connection between [defendant's] exercise of a constitutional right and the Government's decision to bring new charges"); *U.S. v. Sainato*, 53 F.Supp.2d 316, 320 (E.D.N.Y. 1999) (rejecting presumption of vindictiveness where defendant's failed to provide sufficient evidence of retaliation for the exercise of

a legal right); *see also Goodwin*, 457 U.S. at 2488-94 (discussing
cases of presumptive vindictiveness and the legal rights involved
and evaluating the nature of the right asserted by the defendant
in that case against the presumption of vindictiveness). Prior
to the filing of the current charges the defendant did not
appeal, sought no collateral review after he pled guilty in 2002.
*See U.S. v. Clarke*, No. CRIM.3:04 CR SRU, 2005 WL 2645003, at *3
(D.Conn July 19, 2005) ("[t]ypically [the presumption] is only
present when the government initiates a criminal prosecution as a
result of the defendant's activities [exercising his rights]
after conviction on a separate charge"); *White*, 972 F.2d at 19.
Moreover, there is no presumptive vindictiveness from "[t]he mere
fact that a new crime is being charged [that differs from the
original charges] . . . *even after acquittal*" on the initial
charges. *Johnson*, 171 F.3d at 141 (applying this rule even where
the government appeared to have had the evidence of this new
crime before the defendant's jury demand); *see also U.S. v.
Esposito*, 968 F.2d 300, 304 (3d Cir. 1992) (applying this rule in
a case in which "the second indictment came from the same nucleus
of operative facts" and "the charges could have been brought in
the first case"). In other words, "[w]hen a State brings another
indictment supported by evidence against a defendant after an

acquittal . . . the State is *not levying punishment for a right exercised but rather for the crimes [the defendant] committed*" and, without more, vindictiveness will not be presumed. *Id.* (internal citations and quotations omitted) (emphasis added). Application of the rule of presumptive vindictiveness is accordingly not appropriate in this case.

Where presumptive vindictiveness is not found, a defendant may still make a claim for vindictive prosecution if he can "demonstrate actual vindictiveness, which requires 'direct' evidence, such as a statement by the prosecutor evidencing the vindictive motive." *U.S. v. Koh*, 199 F.3d 632, 640 (2d Cir. 1999); see also *Johnson*, 171 F.3d at 140 (noting that such direct evidence is only available in a "rare case") (internal citations and quotations omitted). The evidence must show that "(1) the prosecutor harbored genuine animus toward the defendant, or was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a 'stalking horse,' and (2) he would not have been prosecuted except for the animus." *Id.* (internal citations and quotations omitted); *see Koh*, 199 F.3d at 640. To obtain discovery on a selective prosecution claim, "a defendant must provide some evidence tending to show the existence of the essential elements of the defense . . . . The

standard is a rigorous one [and] . . . a significant barrier to
the litigation of insubstantial claims." *U.S. v. Sanders,* 211
F.3d 711, 717 (2d Cir. 2000) (internal citations and quotations
omitted); *see also U.S. v. Aviv*, 923 F.Supp. 35, 37 (S.D.N.Y.
1996) ("[t]o obtain discovery, the defendant must show a
colorable basis for the claim.  To obtain a hearing, the
defendant must raise a reasonable doubt that the government acted
properly in seeking the indictment.  Both standards require the
defendant to offer some evidence supporting both elements of the
claim") (internal citations and quotations omitted); *U.S. v.
Sanders*, 17 F.Supp.2d 141, 150 (E.D.N.Y. 1998).

     Here, nothing constitutes objective evidence of animus.  The
fact that the current indictment was filed just before the
running of the statute of limitations and defendant's release
from prison is not sufficient evidence even if the government's
goal is, as defendant suspects, to "keep Mr. Awan enmeshed in the
federal criminal justice system."  In all events, attributing the
timing of the government's decision to animus is, without more,
mere speculation. *See U.S. v. Clarke*, No. CRIM.3:04 CR SRU, 2005
WL 2645003, at *4 (D.Conn. July 19, 2005) (finding that the
timing of an indictment, filed shortly after defendant initiated
a civil suit against the government, "is not nearly sufficient to

establish either of the two elements of actual vindictiveness,"
and denying discovery and a hearing); *see also U.S. v. Dean,* 119
F.Supp.2d 81, 84 (D.Conn. 2000).  Defendant has produced no
evidence at all that he would not have been prosecuted but for
some animus; indeed, the crime of which he is accused is a
serious one. See *Aviv*, 923 F.Supp. at 38 (concluding the even
though the defendant had made a strong showing of animus, his
failure to make an "objective showing that the prosecution would
not have been brought even in the absence of vindictiveness" was
fatal to his requests for discovery, a hearing or dismissal).
Since the defendant has produced no evidence of actual
vindictiveness, neither discovery nor a hearing is warranted and
the motion to dismiss on these grounds must be denied.[33]


*H. Double Jeopardy*

    Finally, defendant has moved to dismiss all counts of the
indictment on Double Jeopardy grounds.  He was indicted in 2001

---

[33] Defendant suggests that the fact that Investigator Ross testified
incorrectly at a hearing before the undersigned that no witnesses from the
original credit card case would be used in the present prosecution somehow
speaks to the issue of vindictive prosecution.  However, even if this
statement was inaccurate, it does not logically demonstrate animus toward the
defendant.

for a violation of 18 U.S.C. § 1029(a)(2).[34]  Subsequently, the

government filed a superceding indictment in 2002 charging as

follows: (A) conspiracy to fraudulently use credit cards, in

violation of § 1029(a)(2), in  the period January 1999 to April

2002; (B) fraudulent use of credit cards, in violation of §

1029(a)(2), in the period May 2000 to May 2001; (C) fraudulent

use of credit cards, in violation of § 1029(a)(2), in the period

April 2001 to December 2001; (D) fraudulent use of credit cards,

in violation of § 1029(a)(2), in the period June 2001 to October

2001; and (E) conspiracy to commit money laundering through the

deposit and withdrawal of the proceeds of the credit card fraud,

in violation of § 1956(a)(1)(A)(I), in the period January 1999 to

December 2001.[35]  In 2003, the government added a superceding

---

[34] In relevant part, the statute reads: "Whoever . . . knowingly and with
intent to defraud produces, uses, or traffics in one or more counterfeit
access devices . . . shall, if the offense affects interstate or foreign
commerce, be punished as provided in subsection (c) of this section." 18
U.S.C. § 1029(a)(2).

[35] In relevant part, the statute reads:

> Whoever, knowing that the property involved in a financial
> transaction represents the proceeds of some form of unlawful
> activity, conducts or attempts to conduct such a financial
> transaction which in fact involves the proceeds of specified
> unlawful activity . . . with the intent to promote the carrying on
> of specified unlawful activity . . . shall be sentenced . . .

18 U.S.C. § 1956(a)(1)(A)(I).  The "specified unlawful activity" defendant was
charged with was fraud in connection with access devices under § 1029, which
is one of the activities defined by reference as a "specified unlawful
activity" in § 1956(c)(7)(A), incorporating "act or activity constituting an
offense listed in section 1961(1) of this title" (18 U.S.C. § 1961(1) includes
§ 1029 in its list of offenses).

information under § 1029(a)(2) for conspiracy to fraudulently use credit cards for the period between January 1999 to April 2002.

Defendant pled guilty to the first count of the superceding indictment in March, 2003, pursuant to a plea agreement, pursuant to which the government agreed not to bring further charges against him for the "credit card and money laundering charged in the superceding indictment during the period of January 1999 through April 2002, it being understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for sentencing enhancement in a subsequent prosecution . . . ." After sentencing in 2004, the remaining counts were dismissed with prejudice on the government's motion.

1. The *Blockberger* Test

The Double Jeopardy clause of the Fifth Amendment states "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. Unless Congress has explicitly decided to impose "cumulative punishments," a court evaluating whether a second prosecution violates the Double Jeopardy clause applies the test described in *Blockberger v. U.S.*, 284 U.S. 299 (1932); *U.S. v. Khalil,* 214 F.3d 111, 117-18 (2d Cir. 2000); *see also U.S. v. Dixon*, 509 U.S.

688 (1993) (reasserting the *Blockberger* test). Under

*Blockberger*, "the test to be applied to determine whether there

are two offenses or only one is whether each provision requires

proof of an additional fact which the other does not." 284 U.S.

at 304. "[I]t is critical whether the "offense" – in the legal

sense, as defined by Congress – complained of in one count is the

same as that charged in another." *U.S. v. Chacko*, 169 F.3d 140,

146 (2d Cir. 1999).


2. Successive Conspiracy

When dealing with successive conspiracy charges, however, as

here, the evaluation is slightly different. Because of "the ease

with which prosecutors can draft indictments that allege what

appear to be separate conspiracies but may actually be parts of

an overall conspiracy," the burden will shift to the prosecution

to show, by a preponderance, that there are two distinct

conspiracies, "if a defendant makes a non-frivolous showing that

two indictments in fact charge only one conspiracy." *U.S. v.

Lopez,* 356 F.3d 463, 467 (2d Cir. 2004) (internal citations and

quotations omitted). To meet its burden, the prosecution must

simply show that "the second prosecution is for a conspiracy

distinct from that previously prosecuted," in which case there

are no Double Jeopardy issues "regardless of an overt act or other evidentiary overlap." *Id.* (internal citations and quotations omitted).

To determine whether the conspiracies are in fact distinct, courts in this circuit employs an eight factor test, evaluating:

> (1) the criminal offenses charged in successive indictments; (2) the overlap of participants; (3) the overlap of time; (4) similarity of operation; (5) the existence of common overt acts; (6) the geographic scope of the alleged conspiracies or location where overt acts occurred; (7) common objectives; and (8) the degree of interdependence between alleged distinct conspiracies.

*U.S. v. Korfant,* 771 F.2d 660, 662 (2d Cir. 1985); *see also Lopez,* 356 F.3d at 467.

This evaluation regarding *successive* conspiracy applies to Count One, the only Count which alleges a conspiracy of which the defendant is a member. The evaluation of Counts Two and Three will apply the *Blockberger* test.[36]

3. Count One

---

[36] Defendant appears to believe that the existence of a conspiracy allegation as an *element* of the offenses charged in Count Two is relevant to the Double Jeopardy issue. It is not, as Count Two is not a conspiracy charge but rather merely contains within it someone else's conspiracy as an element of the crime, as discussed above.

Assuming Count One of the indictment is certified to the provision of funds and personnel, as the government says it should be, defendant's Double Jeopardy claim does not merit a dismissal under *Korfant.*[37]  However, as the defendant has noted, he may have been "hamstrung" in making out the fact-based showing required by *Korfant* due to the deficiencies in the indictment and the information regarding co-conspirators which I have ordered the government to provide in a new indictment and bill of particulars.  For this reason, I invite additional briefing on this matter after this information is provided.

First, the crime of providing funds to an alleged terrorist organization is entirely unrelated to the credit card and money laundering conspiracies charged in 2002.  Even though some of the acts may overlap, the substantive crime of sending money to a terrorist group is substantially different from the crimes of obtaining money by the fraudulent use of credit cards and laundering the proceeds; in only one example, the current charge requires proof that the support was provided knowing that it would be used as part of a conspiracy to murder, kidnap or maim, an element not present in the 2002 charges, while the 2002

---

[37] Defendant does not argue that the Double Jeopardy would bar a charge regarding the provision of personnel.  Accordingly, I do not address that element of the indictment.

charges involve "intent to defraud," the use of "counterfeit access devices," and the knowing use of "proceeds of a specified unlawful activity" to "promote the carrying on" of the fraud (for the § 1956 charge), which are irrelevant to the current charge.[38] Second, other than the defendant, there appear to be few, if any, participants from the 2002 charges involved in the material support activities, and several key figures who are involved now were not involved in the previous scheme, indicating that the conspiracies are in fact distinct.[39]  Third, while there is some overlap in time, the current conspiracy extended into 2005, well beyond the time period of the 2002 conspiracy charges.  Fourth, by all indications, there is very little operational overlap. While some of the money received from the 2002 operation may have been funneled to the KCF and some of the same bank accounts used, the government has indicated that the current allegations involve the solicitation of funds and the transfer of those funds to organizations overseas, a very different operation than one which involved fraudulently obtaining credit cards.  Fifth, from the papers on this motion, it appears clear that the relevant overt

---

[38] For this reason, Count One poses no problem under the *Blockberger* test.

[39] The fact that one or more witnesses from the 2002 indictment may also testify in the current charges is of little significance – that one witness associated with the defendant would become aware of two crimes is hardly surprising.

acts in the current charge involve sending of money to the KCF, which are not the same overt acts involved in credit card fraud and money laundering, even if some of the money from the credit card scheme was ultimately sent to Pakistan. Sixth, the conspiracies clearly involve different locations, with the 2002 conspiracies taking place entirely in the United States and the current charge involving funds being sent to Pakistan. Seventh, the objective of the 2002 conspiracy appears to have been purely financial, while the current conspiracy involves assisting a foreign organization in its political ends. Finally, the only interdependence of note is the use of the same bank accounts in connection with the commission of two sets of crimes, which hardly seems to indicate that the conspiracies are one and the same. As such, the information provided by the government appears to satisfy its burden of showing that these are two independent conspiracies.


4. Count Two

No matter how the government ultimately defines defendant's material support, there is no Double Jeopardy issue here under *Blockberger*. In Count Two of the current indictment, the government must prove that defendant provided the "material

support" (however it is ultimately defined by the government)

"knowing and intending" that it be used to prepare for "a

conspiracy to murder, kidnap or maim," while the 2002 indictments

do not contain any such elements in either 18 U.S.C. § 1029(a)(2)

or 18 U.S.C. 1956(a)(1)(A)(I).  The 2002 indictments require

findings of "intent to defraud," the use of "counterfeit access

devices," and the knowing use of "proceeds of a specified

unlawful activity" to "promote the carrying on" of the fraud (for

the § 1956 charge), which are not elements under Count One of the

current indictment.  Therefore, there is no Double Jeopardy under

*Blockberger*.


C. Count Three

    There is also no Double Jeopardy concern created by with

Count Three. In that count, the charge requires proof that the

defendant intentionally "transport[ed], transmit[ted], or

transfer[ed]" funds "to a place outside the United States," with

the intent to "carry on an offense against a foreign nation

involving murder and destruction of property," elements nowhere

in the 2002 charges.  Again, the 2002 indictments require

findings of "intent to defraud," the use of "counterfeit access

devices," and the knowing use of "proceeds of a specified

unlawful activity" to "promote the carrying on" of the fraud, which are not elements under Counts Three. Therefore, there is no Double Jeopardy under *Blockberger*.[40]

**CONCLUSION**

---

[40] Defendant's note that both the prior and current charges involve "money laundering" is misleading. The relevant statutes reveal that the charges are entirely unrelated. The 2002 indictment involves § 1956(a)(1)(A)(I) and (c)(7)(A), relating to the laundering of funds obtained from illegal activities (specifically credit card fraud) to promote the carrying on of that activity, while the current indictment charges a violation of § 1956(a)(2) and (c)(7)(B)(ii), relating to the transfer of funds to locations outside the United States for the purpose of promoting a violent offense against a foreign nation.

Some courts have found that in certain circumstances, when dealing with a statute covering a broad range of conduct, it is appropriate to look beyond the statutory elements to the allegations of the indictment itself to determine if "the elements of one charged offense are subsumed within another charged offense." *U.S. v. Zvi*, 168 F.3d 49, 57 (2d Cir. 1999) (finding Double Jeopardy when the "financial transactions" in one count were the same transactions which were elements of a second count); *see also U.S. v. Liller*, 999 F.2d 61, 63 (2d Cir.1993) (discussing the possible application of this rule to successive prosecutions); *U.S. v. Seda*, 978 F.2d 779, 782 (2d Cir.1992) (finding that "false loan applications are simply a species of bank fraud"). Courts of this circuit have expressed considerable doubt about this rule in the wake of the re-emergence of the *Blockbuster* test in 1993 and have also noted that it has only been applied to multiplicitous, and not successive, prosecutions. *See U.S. v. Sessa,* 125 F.3d 68, 73 (2d Cir. 1997); *U.S. v. Chacko*, 169 F.3d 140, 146 (2d Cir. 1999). However, even if that rule were applied to this case, there is no indication that the elements of the credit card and money laundering charges from 2002 underlie and support the current material support and illegal transfer charges; fraudulently obtaining credit cards and then hiding the proceeds is not a 'species' of material support or illegal transfer of money in support of an offense against a foreign government and nowhere does it appear that the government need prove any of the facts of 2002 charges to support the current indictment.

For the reasons set forth above, defendant's motion to dismiss the indictment is granted without prejudice as to Counts One and Two and denied as to Count Three.  The clerk is directed to communicate a copy of this opinion to all parties.

       SO ORDERED.

Dated :   Brooklyn, New York
         October 26, 2006

               By: <u>/s/ Charles P. Sifton (electronically signed)</u>
                   United States District Judge