UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

United States of America

                                    CR-06-0154 (CPS)

  - against -                       MEMORANDUM OPINION
                                      AND ORDER

Khalid Awan,

                              Defendant.

----------------------------------------X

SIFTON, Senior Judge.

      After a jury trial, defendant, Khalid Awan was found guilty on December 20, 2006 of (1) one count of conspiring to provide material support and resources, knowing and intending that such support would be used in preparation for and in carrying out a conspiracy to murder, kidnap or maim a person or persons outside of the United States, in violation of 18 U.S.C. § 2339(A) and 18 U.S.C. § 956(a); (2) one count of actually providing material support and resources, knowing and intending that such support would be used in preparation for and in carrying out a conspiracy to murder, kidnap or maim a person or persons outside of the United States, in violation of 18 U.S.C. § 2339(A) and 18 U.S.C. § 956(a); and (3) one count of knowingly and intentionally transporting, transmitting and transferring monetary instruments and funds from a place in the United States to a place outside the United States, with the intention of promoting an offense against foreign nation, involving murder and destruction of

property by means of explosive or fire in violation of 18 U.S.C. § 1956(c)(7)(B)(ii). Now before this Court is defendant's motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29 or for a new trial under Federal Rule of Criminal Procedure 33.

## Background

On October 25, 2001, FBI agents arrested Khalid Awan at a house in Garden City, New York on a charge of credit card fraud. He was indicted on those charges on December 4, 2001; a superseding indictment was filed on May 7, 2002. On March 17, 2003 defendant pleaded guilty to one count of credit card fraud in violation of 18 U.S.C. § 1029. Defendant was sentenced on October 28, 2004 to sixty months incarceration. A judgment of conviction reflecting that sentence was entered on November 8, 2004.

Defendant was scheduled to be released from his 2004 sentence in March, 2006. However, on March 8, 2006 he was again indicted. A superseding indictment was filed August 1, 2006 and a second superseding indictment filed October 23, 2006. The three-count indictment second superseding reads as follows:

Count One:

In or about and between 1998 and February 2005, both dates

-3-

being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant KHALID AWAN, together with others, did knowingly and intentionally conspire to provide material support and resources, to wit: currency, monetary instruments, financial services and personnel, knowing and intending that they were to be used in preparation for, and in carrying out, a conspiracy to commit at a place outside the United States an act that would constitute the offense of murder, kidnapping or maiming if committed in the special maritime and territorial jurisdiction of the United States, in violation of Title 18 United States Code, Section 956(a).[1]


Count Two:

In or about and between 1998 and November 6, 2001, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant KHALID AWAN did knowingly and intentionally provide material support and resources, to wit: currency, monetary instruments, financial services and personnel, knowing and intending that they were to be used in preparation for, and in carrying out, a conspiracy to commit at a place outside the United States an act that would constitute the offense of murder, kidnapping or maiming if committed in the special maritime and territorial jurisdiction of the United States, in violation of Title 18 United States Code, Section 956(a).[2]


Count Three:

In or about and between 1998 and November 6, 2001, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant KHALID AWAN did knowingly and intentionally transport, transmit and transfer monetary instruments and funds from a place in the United States to a place outside the United States with the intent to promote the carrying on of specified unlawful activity, to wit: an offense against a foreign nation, to wit: India, involving murder as defined by Indian Penal Code

---

[1] *See* 18 U.S.C. § 2339(a)(2005).

[2] *See* 18 U.S.C. § 2339(a)(2001).

Section 300 and destruction of property by means of explosive or fire as defined by Indian Penal Code Section 435.[3]

Defendant was arraigned on these charges on March 16, 2006, August 9, 2006 and October 30, 2006.  A jury trial began before the undersigned on December 4, 2006 and concluded with a verdict of guilt on all three counts on December 20, 2006.

## Discussion

I. Rule 29 Motion

At the close of the government's case, the defendant moved for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, at which time the Court reserved decision on that question.  Under Rule 29, "the court . . . must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). On such a motion, the defendant "bears a heavy burden," since "evidence must be viewed in the light most favorable to the government and all permissible inferences must be drawn in its favor." *U.S. v. RW Prof'l Leasing Serv.s Corp.,* 452 F.Supp.2d 159, 172 (E.D.N.Y. 2006). In addition, "[t]he court also must defer to the jury's resolution of witness credibility and, where

---

[3] *See* 18 U.S.C. § 1956(a)(2)(A).

there is conflicting testimony, to its selection between
competing inferences . . . . [moreover] the court must consider
the evidence in its totality, and not in isolation." *Id*.
Accordingly, "[t]he jury's verdict must be sustained, if any
rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt." *U.S. v. Finley*, 245 F.3d
199, 202-3 (2d Cir. 2001) (internal quotations and citations
omitted).  Where "either of the two results, a reasonable doubt
or no reasonable doubt, is fairly possible, the court must let
the jury decide the matter." *U.S. v. Autuori*, 212 F.3d 105, 114
(2d Cir. 2000).  "[T]he court may enter a judgment of acquittal
only if the evidence that the defendant committed the crime
alleged is nonexistent or so meager that no reasonable jury could
find guilt beyond a reasonable doubt." *U.S. v. Guadagna*, 183 F.3d
122, 130 (2d Cir. 1999) (internal quotations and citations
omitted).  That said, "a conviction based on speculation and
surmise alone cannot stand . . . . [and] the government must do
more than introduce evidence at least as consistent with
innocence as with guilt." *U.S. v. D'Amato.* 39 F.3d 1249, 1256 (2d
Cir. 1994) (internal quotations and citations omitted).

*A. Count One - Conspiracy to Provide Material Support*

Defendant offers several reasons why the evidence introduced
at trial was insufficient to establish a guilty verdict for Count

One.


1. Uncorroborated Statements

When the government relies on statements or admissions of

the defendant, such statements require corroboration to support a

conviction. *U.S. v. Irving*, 452 F.3d 110, 118 (2d Cir. 2006).

However,

> the corroborating evidence need not [itself] prove the
> essential elements of the crime.  Rather, the
> corroboration must prove that the confession was
> reliable, and must prove any elements of the crime to
> which the defendant did not confess . . . . [T]he
> confession, if proven reliable, may serve as the only
> evidence reaching the *corpus delicti* ["body of the
> crime]. . . . Although the corroborative evidence need
> not independently prove the injury or harm resulting
> from the crime, it must support the essential facts
> admitted sufficiently to justify a jury inference of
> their truth . . . . The modern corroboration rule
> requires only that there be substantial independent
> evidence which would tend to establish the
> trustworthiness of the statement.

*Id.* at 118-19 (2d Cir. 2006).

There are two types of statements addressed by the

corroboration rule:

> those that bear insufficient indicia of reliability as
> proof of the defendant's commission of the offense to
> support a finding of guilt beyond a reasonable doubt,
> and those that, considering the nature and the context
> of the defendant's words, demonstrate his commission of
> the offense so reliably that, without need of other
> supporting evidence, they can support a finding of
> guilt beyond a reasonable doubt.

*U.S. v. Bryce*, 208 F.3d 346, 355 (2d Cir. 2000).  "Some examples

of self-corroborating statements - statements so reliable in and
of themselves that they require no corroborative evidence - are
statements made prior to the commission of the crime . . . and
statements made between co-conspirators to accomplish the ends of
their criminal enterprise." *Irving*, 452 F.3d at 118 (internal
citations omitted).

According to the defendant, incriminating statements made by
the defendant to Investigator John Ross in 2006, to Harjit Singh
("Harjit") in 2003 and 2004, and to Iftikhar Mian in 2000 or 2001
are not self-corroborating.[4] The defendant argues that the

---

[4] Defendant's statements to Ross, Harjit and Mian constitute admissions
which help establish his knowledge of the KCF's violent activities and the
fact that he met with individuals who gave him money which he transferred
money from the United States to Pakistan on the KCF's behalf.

Ross testified, among other things, that the defendant told him he had
met with Paramjit Singh Panjwar ("Panjwar"), that he was aware of Panjwar's
violent activities, that Panjwar was the leader of the Khalistan Commando
Force ("KCF") and that the KCF was involved in killing people in India.
Transcript, 888-901. The defendant also described meetings and calls he had
the KCF sympathizers, identified Gurbax Singh as one of the KCF supporters he
met with and told Ross he had transferred $60,000 to $70,000 to Panjwar.
Transcript, 910-13. Further, the defendant told investigators that he knew the
money "was going to be used for bad things . . . shooting and killing of
innocent people . . . in India." Transcript, 914.

According to Harjit's testimony, between June 2003 and November 2004, he
and the defendant had several conversations about the KCF, both recorded and
unrecorded. In those conversations, the defendant discussed his knowledge of
Panjwar and the KCF's methods, training and violent activities and his support
of the KCF and told Harjit he would take him to Pakistan to receive military
training. Transcript, 669-696, 738-801; Government Exhibits, 106A, 106B, 106C,
106D, 106E, 107E. According to Harjit's testimony, the recorded conversations
make specific references to, among other things, the number of people Panjwar
claims he has killed, Panjwar's attempt on the Indian Prime Minister's life, a
meeting the defendant had with Panjwar and ISI officers in which Panjwar
described his close relationship to the defendant and in which an ISI officer
referred to the defendant a "silent mujahid," the possibility for receiving
military training in Pakistan, and the means through which the defendant
transferred money to Panjwar. Transcript, 752-53, 763-65, 768, 784-787; GX
106B, 9-10, 18, 21; 106C, 4; 107A, 4-5.

In Mian's testimony, he said that the defendant had told him that he
sent money to "Paramjit Singh," a "freedom fighter" working for the Khalistan
movement who was wanted for murder in India. Transcript, 587-89.

government has provided no bank records, documents or forensic evidence to corroborate the defendant's statements.

However, as the government argues, there is both testimonial and documentary evidence which establishes the reliability of each statement and renders them corroborated.

First, the defendant's statements to Ross, Harjit and Mian corroborate one another. In conversations with each of these individuals, the defendant, according to their testimony and the recorded conversations introduced at trial, admitted to knowledge of KCF leader Paramjit Singh Panjwar ("Panjwar") and the Khalistan Commando Force's ("KCF") violent activities and mission and to sending the KCF money from the United States. Though the defendant argues that these statements cannot corroborate each other, the consistency of the admissions made on different occasions over the course of five years in entirely different contexts (to a government investigator, to a friend before defendant's arrest, and twice to a fellow inmate) tend to establish that each is indeed trustworthy.

Second, there was substantial other evidence introduced at trial which supports the essential facts admitted by the defendant. Gurbax Singh ("Gurbax") and Baljinder Singh ("Baljinder"), confessed supporters of the KCF, both testified to using the defendant as a means to transfer money to the KCF, corroborating the defendant's statements to government

investigators that various Sikhs delivered money to him which he sent to Pakistan and defendant's recollection that one of those who delivered the money was Gurbax. Transcript, 213-217, 436-446. Baljinder also testified that the defendant told him that Panjwar was a "very good friend" and that he would send the money Baljinder gave him to Panjwar, while Gurbax recalled seeing a photograph of Panjwar and his family at the defendant's home. Transcript, 215, 441. In addition, Baljinder testified that Panjwar told him that the defendant was a "trustworthy" and a "very good friend" who had done this type of "work" for him before. Transcript, 446-47. The government also introduced tape recorded phone calls between the defendant and Panjwar in which the defendant vouched for Harjit's reliability. GX 101A, 5.[5] Further, the government introduced supporting evidence, including documents recovered from the defendant, listing contact information for KCF members and supporters, including "Paramjit Singh," and a photograph of Panjwar. GX 7A; 7C; 9C. Finally, the government introduced bank records showing wire transfers from the Tee Jay's Fashion account at HSBC bank to Habib Bank in Pakistan and checks drawn from the Tee Jay's Fashion account at HSBC negotiated at Habib Bank, corroborating defendant's

---

[5] The defendant does not argue that his recorded phone conversations with Panjwar are uncorroborated statements. Those conversations are self-corroborating as statements made a co-conspirator in furtherance of the conspiracy.

statement to investigators that he has access to accounts
controlled by a Mr. Butt at HSBC bank which he used to transfer
money to Panjwar through an account at Habib Bank.[6] GX 8A; 8B;
8C; 8D; 10.  Even though this evidence does not prove all the
elements of each crime, it is sufficient to establish the
reliability of the defendant's statements regarding his knowledge
of the mission and methods of the KCF, as well as his efforts to
support the KCF by providing funds and personnel.

2. Meeting of the Minds/Specific Intent

     The defendant also contends that the evidence at trial did
not sufficiently establish a meeting of the minds between the
defendant and his alleged coconspirators to further a conspiracy
in India to murder, kidnap or maim.  Defendant also argues that
the government failed to prove that the defendant provided
material support, "knowing and intending" that the support was to
be used in carrying out the conspiracy to murder, kidnap or maim.

     However, taken as a whole, the evidence more than
sufficiently supports a finding by the jury that the defendant
and his fellow conspirators knew about the purposes and violent
methods of the KCF and knowingly joined in a conspiracy to
support the KCF with the intent of furthering its attempts to

---

[6] Mian testified that defendant told him that Butt was a friend of the
defendant's who ran a clothing store called Tee Jay's Fashions. Transcript,
601.

murder, maim or kidnap individuals in India in furtherance of its
political objectives.  The defendant demonstrated his knowledge
of the KCF's violent activities when he told Harjit about attacks
carried out by the KCF in India and how the KCF was trained and
supported by the Pakistani intelligence services (the "ISI").
Defendant also described to Harjit personal details about
Panjwar, including the number of people he was responsible for
killing, the number of bombings he had committed, his
participation in a plot to assassinate the Indian Prime Minister,
and how he lived in Pakistan and was supported by the ISI; much
of this detail was repeated to government investigators when
defendant was interviewed in 2006. Transcript, 680-84, 675-76,
679-80, 748-49, 751-53, 794-96, 896-902, 905.  The defendant told
Harjit that the money he sent was to support the KCF "who were
fighting in India." Transcript, 686.  The defendant admitted to
government investigators that he knew the money he sent would be
used for "shooting and killing of innocent people . . . in
India," while Mian testified that the defendant told him that he
sent money to a "freedom fighter" named "Paramjit Singh" who was
working for the movement to establish a separate Sikh state and
who was wanted for murder in India. Transcript, 914, 587-89.[7]

---

[7] Though conceding that motive is not an element of the offense, the
defendant notes the "startling" lack of a motive in the record and argues that
the lack of a motive for the defendant to assist a violent Sikh conspiracy in
India bears on the question of intent and agreement to join the conspiracy.
Given the significant evidence supporting the jury's finding that the
defendant did indeed knowingly participate in the conspiracy, the lack of a

3. Period of Criminal Activity

Defendant contends that the evidence is insufficient to establish that the defendant committed the charged offenses in the time period set forth in the indictment, namely between 1998 and February 2005. According to the defendant, Baljinder did not provide any dates for the meetings he had with the defendant and Gurbax was uncertain whether he met with the defendant in 1999 or 2000, testifying that the fundraising events were held in "1999 or 2000." Transcript, 208.

Despite Gurbax's uncertainty, the evidence introduced at trial supports a conclusion that the meeting with Gurbax and Baljinder occurred after September 2000 since they testified that they met the defendant at his house in Garden City, which the government demonstrated the defendant did not own until September 2000. Transcript, 1019-20; GX, 7I. In addition, Harjit testified that the defendant told him that he had arranged for a $21,000 wire transfer to a KCF fighter shortly before his arrest, which occurred on October 25, 2001. Transcript, 686-88.

Further, the evidence supports a finding that the defendant continued to participate in the conspiracy even after his 2001

---

demonstrated motive is of no relevance. *See U.S. v. MacPherson,* 424 F.3d 183, 185 n.2 (2d Cir. 2005) (where motive is not an element of the crime, "the lack of evidence on this point does not, as a matter of law, preclude conviction"). However, the defendant told investigators that he wanted to associate with Panjwar "because he knew Mr. Panjwar was a terrorist," raising a fair inference that defendant, as a "silent mujahid," sought an association with terrorists in order to pursue his own political objectives vis a vis that government of India. Transcript, 763, 981.

arrest by trying to recruit Harjit to join the KCF in 2003 and by introducing Harjit to Panjwar in 2004. Accordingly, the evidence is sufficient to support a finding by the jury that the defendant actively participated in the conspiracy to provide funds and personnel after 1998 and before the February 2005.

4. Statute of Limitations

The defendant argues that the limitations period for Count One is five years and that the government failed to produce evidence of an offense within the five years period prior to his indictment in March, 2006.

The limitations period for violations of 18 U.S.C. § 2339A, the statutory basis for Counts One and Two, which is eight years, not five. While 18 U.S.C. § 3282 provides a five year limitations period for most non-capital crimes, 18 U.S.C. § 3286(a) provides an eight year limitations period for any offense "listed" in 18 U.S.C. § 2332b(g)(5)(B), such as 18 U.S.C. § 2339A.[8] However, even if the statute of limitations was only five years, the government has, as discussed above, introduced

---

[8] Prior to October, 2001 18 U.S.C. § 3286(a) did not include § 2339A in the extended limitations period. The application of the eight year limitations period to defendant's prosecution does not create an *ex post facto* problem since "[t]he long-standing rule in this circuit is that Congress has the power to extend the period of limitations without running afoul of the *ex post facto* clause, provided the original period has not already run." *U.S. v. Morgan,* 113 F.3d 1230 (2d Cir. 1997); *see also U.S. v. Grimes,* 142 F.3d 1342, 1351 (11th Cir. 1998) (citing cases). When Congress extended the period of limitations in 2001, the period of limitations on the defendant's activities had not yet run.

evidence which supports a finding that the defendant continued to provide financial services to the KCF into the summer and fall of 2001, well within five years period prior to March, 2006. Evidence of the attempt to recruit Harjit in 2003 alone supports the conclusion that the defendant acted in furtherance of the conspiracy within the limitations period. *See U.S. v. Scop*, 846 F.2d 135, 138-39 (2d Cir. 1988) ("The statute of limitations runs from the date of the last overt act in furtherance of the conspiracy").[9]

## 5. Sending Money

Defendant further argues that there is insufficient evidence that the defendant sent money to Panjwar or the KCF.

However, defendant's own admissions again support the jury's

---

[9] Defendant does not contend on this motion that the Court should have given an jury instruction regarding the statute of limitations. The defendant requested that the Court instruct the jury that the overt acts in furtherance of the conspiracy alleged in Count One must be found to have occurred within five years of the indictment date. At the charging conference, which occurred several days before the jury instructions were given, I alerted the parties to 18 U.S.C. § 3286 and inquired if there was any need to instruct on the limitations period given that timeframe. Both sides were given an opportunity to review the issue and the defendant did not object at that time or take exception to the charge. Transcript, 1079, 1081-82, 1096. The defendant never requested any instruction, even orally, regarding the statute of limitations with regards to Count Two or Count Three. Accordingly, he has waived any objection to the lack of a charge or jury finding on the subject. *See Lavoie v. Pacific Press & Shear Co.*, 975 F.2d 48, 55 (2d Cir.1992) ("Failure to object to a jury instruction or the form of an interrogatory prior to the jury retiring results in a waiver of that objection."); *U.S. v. Grammatikos*, 633 F.2d 1013, 1022 -1023 (2d Cir. 1980) (where "no written or timely oral requests for [a statute of limitations] instruction[] were made, and the record reveals that no objections were raised to the court's failure to include such charges . . . we have long and consistently held such issues to have been waived).

finding. According to the testimony of Ross, defendant himself admitted to investigators that after he transmitted money to Panjwar he would call him to confirm receipt, and Baljinder testified that Panjwar told him that the defendant "already did this work for me," referring to sending money. Transcript, 916, 446-47. Defendant also discussed various accounts and methods for getting funds to the KCF with Harjit and investigators. This evidence is sufficient to support a finding that the defendant sent money to the KCF, even without evidence of wire transfers directly connecting the defendant to transferred funds.

6. Conspiracy to Provide Personnel

Finally, the defendant argues that since the only testimony bearing on the issue of the provision of personnel was from Harjit, who testified that the defendant tried to recruit him to work for the KCF after Harjit was released from prison, the evidence was insufficient for a finding of guilt.

However, as the defendant himself notes, "[a] conviction may be sustained on the basis of the testimony of a single accomplice, so long as that testimony is not incredible on its face and is capable of establishing guilt beyond a reasonable doubt." *U.S. v. Gordon*, 987 F.2d 902, 906 (2d Cir. 1993). Nothing about Harjit's testimony renders it incredible as a matter of law. Harjit's testimony about his unrecorded

discussions with the defendant is corroborated by the May 2004 recorded conversations between the defendant and Harjit in which the defendant confirmed they could train in Pakistan after they left prison.  The phone recordings in which the defendant told Panjwar that he had checked out Harjit before introducing hims adds further support a finding that the defendant was recruiting for the KCF.

*B. Count Two - Provision of Material Support*

In arguing that he should be acquitted under Rule 29 on Count Two, defendant relies primarily on the arguments he made for acquittal on Count One.[10]  Accordingly, for the reasons set forth with regards to Count One the evidence is sufficient to support a conviction for the defendant on Count Two.

Defendant also argues, again with regard to Count Two, that the government did not provide sufficient evidence that the defendant committed the charged offense between 1998 and October 25, 2001.  However, as discussed above, the government produced evidence that the defendant engaged in funds transfers to the KCF beginning at least in 2000 and continuing into mid-2001. Further, no request to charge, contention, or exception was taken with respect to the statute of limitations applicable to Count

---

[10] The defendant states, without support, that since Count Two is a substantive count,"the government's burden is arguably higher that [sic] proving conspiracy in Count One."  Even if this were the case, the evidence produced at trial is sufficient for a finding of guilt.

Two.

The defendant also argues that since government witnesses provided "widely divergent estimates of the amounts [the defendant] allegedly transferred," ranging from $70,000 to $800,000, these varying estimates, coupled with the lack of documentary evidence to corroborate them, "can in no way be considered anything but 'speculation or surmise' insufficient to support a guilty verdict." Transcript, 913.[11] However, the defendant himself explained the disparity, telling Ross that he had actually transferred $60,000 to $70,000 and that he may have told others that he transferred up to $800,000 but that was not true. Transcript, 913. Moreover, the statute does not require a finding of a specific amount of money transferred to establish guilt.[12] Accordingly, the evidence is sufficient to support the jury's finding that the defendant did transfer funds to the KCF.

*C. Count Three - Money Laundering*

In arguing that he should be acquitted under Rule 29 on Count Three, defendant relies on the arguments he made for acquittal on Counts One and Two. As discussed above, the evidence, and the defendant's own admissions, support a finding

---

[11] Defendant states that the estimates ranged from $2,000 to $800,000. However, the $2,000 figure was only what Gurbax testified to and is not an estimate of the total amount provided by the defendant.

[12] Neither 18 U.S.C. § 2339A(a) nor 18 U.S.C. § 1956(a)(2)(A) lists any threshold amount of money.

that he transferred money between 1998 and November 6, 2001 with the intent of promoting the murder of individuals in India.

The statute of limitations for Count Three is five years under 18 U.S.C. § 1956. The evidence, as discussed above, is more than sufficient for a finding that the defendant continued his funding activities into at least the summer of 2001, within five years of the indictment. Further, no request to charge, contention, or exception was taken with respect to the statute of limitations applicable to Count Three.

## II. Rule 33 Motion

Defendant also moves for a new trial under Rule 33 of the Federal Rules of Criminal Procedure. Under Rule 33, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Rule 33 gives the trial court "broad discretion to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *U.S. v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992). However, this discretion is to be "exercised sparingly," *Id.* at 1414, and while "the district court may weigh the evidence and credibility of witnesses . . . [it] may not wholly usurp the jury's role." *U.S. v. Espaillet*, 380 F.3d 713, 720 (2d Cir. 2004) (internal citations omitted). "It is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the

jury function of credibility assessment." *Sanchez*, 969 F.2d at
1414.  "An example of exceptional circumstances is where
testimony is patently incredible or defies physical realities,
although the district court's rejection of trial testimony by
itself does not automatically permit Rule 33 relief." *U.S. v.
Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (internal quotations
and citations omitted).  "Indeed, this standard has been
described standard has been described as a heavy burden . . . and
it is well-settled that motions for new trials are not favored
and should be granted only with great caution." *U.S. v. RW Prof'l
Leasing Serv.s Corp.*, 452 F.Supp.2d 159, 172 (E.D.N.Y. 2006)
(internal quotations and citations omitted). "The ultimate test
on a Rule 33 motion is whether letting a guilty verdict stand
would be a manifest injustice.  The trial court must be satisfied
that competent, satisfactory and sufficient evidence in the
record supports the jury verdict." *Ferguson*, 246 F.3d at 134
(internal quotations and citations omitted).

The defendant argues that the Court should grant this motion
and order a new trial on all three counts of the conviction,
since permitting the guilty verdict to stand would be a "manifest
injustice."  In particular, the defendant argues that the
credibility of the government's witnesses should be evaluated in
light of an absence of corroborative documentary and forensic
evidence.

None of the arguments made by the defendant present "exceptional circumstances" or demonstrate "manifest injustice." Fact testimony from admitted felons and co-conspirators, testifying pursuant to cooperation agreements, is common in criminal cases, nor is it particularly disturbing that Mian may have initially lied to government investigators before revealing what he knew about the defendant. Moreover, the testimony of each witness was substantially corroborated by the testimony of the other witnesses, the tape recordings introduced into evidence and the testimony of Ross regarding defendant's admissions. Nor is there any reason to believe that the jury convicted on grounds of less than reasonable doubt because the case was described as involving terrorism. The jury was carefully instructed that should not allow emotional feelings elicited by the word "terrorism" to enter into its consideration of the offense. The statute under which the defendant was prosecuted in Counts One and Two, 18 U.S.C. § 2339A, is, for better or worse, entitled "Providing material support to terrorists" and the alleged activities of the KCF, which include killing innocent civilians, clearly fall within the common understanding of the term terrorism, whether so-called or not. Accordingly, the Rule 33 motion is denied.

**CONCLUSION**

For the reasons set forth above, defendant's motion for a judgment of acquittal and his motion for a new trial are denied. The clerk is directed to furnish a copy of this opinion to all parties.

SO ORDERED.

Dated : Brooklyn, New York
        March 7, 2007

              By: /s/ Charles P. Sifton (electronically signed)
                  United States District Judge