

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term 2008

(Argued: December 10, 2008)          (Decided: June 14, 2010)

Docket No. 07-4315-cr (L), 07-4601-cr (XAP)

————————————————————

UNITED STATES OF AMERICA,

*Appellee-Cross-Appellant,*

-v.-

KHALID AWAN,

*Defendant-Appellant-Cross-Appellee.*

————————————————————

Before: POOLER, RAGGI, and LIVINGSTON, *Circuit Judges*.

————————————————————

Appellee-Cross-Appellant the United States of America appeals from a judgment of
conviction and sentence of the United States District Court for the Eastern District of New York
(Charles P. Sifton, *Judge*) in which the district court denied the United States's request for
imposition of the terrorism enhancement, which applies to felonies that "involved, or [were]
intended to promote, a federal crime of terrorism," U.S.S.G. § 3A1.4, to each of Defendant-
Appellant-Cross-Appellee Khalid Awan's three counts of conviction. We conclude that the district

1

CERTIFIED COPY ISSUED ON 06/14/2010

1   court committed legal error by failing to consider application of the "intended to promote" prong of

2   Section 3A1.4 and by misconstruing the "involved" prong, as both apply to Awan's conduct.

3   Accordingly, we vacate Awan's sentence and remand for further proceedings in the district court.

4       VACATED AND REMANDED.

5

6

7   SEAN MICHAEL MAHER, Wahid, Vizcaino & Maher LLP,

8   New York, NY, *for Defendant-Appellant-Cross-Appellee*

9   *Khalid Awan.*

10

11   KELLY T. CURRIE, Assistant United States Attorney (David C.

12   James, Marshall L. Miller, Karin Klapper Orenstein, Andrew

13   E. Goldsmith, Assistant United States Attorneys, on the

14   brief), for Benton J. Campbell, United States Attorney for the

15   Eastern District of New York, Brooklyn, NY, *for Appellee-*

16   *Cross-Appellant United States of America.*

17

18

19

20

21   DEBRA ANN LIVINGSTON, *Circuit Judge*:

22       Cross-Appellant the United States appeals from a judgment of conviction and sentence of

23   the United States District Court for the Eastern District of New York (Charles P. Sifton, *Judge*)

24   finding the Sentencing Guidelines' terrorism enhancement, which applies to felonies that "involved,

25   or [were] intended to promote, a federal crime of terrorism," U.S.S.G. § 3A1.4, inapplicable to all

26   of Cross-Appellee Khalid Awan's counts of conviction.[1] Because we conclude that the district court

27   misconstrued both prongs of § 3A1.4, we vacate the judgment of the district court and remand for

28   resentencing.

---

[1] Awan raises various challenges to his convictions, which are addressed in an accompanying summary order.

# BACKGROUND

At the conclusion of a three-week jury trial in the United States District Court for the Eastern District of New York, the Cross-Appellee Khalid Awan ("Awan") was convicted of (1) conspiring to provide material support and resources to be used in a conspiracy prohibited by 18 U.S.C. § 956(a), to wit, a conspiracy to commit murder, kidnapping, or maiming outside the United States, in violation of 18 U.S.C. § 2339A; (2) providing material support and resources to be used in such a conspiracy, also in violation of 18 U.S.C. § 2339A; and (3) the international transfer of money with the intent to promote specific unlawful activity, to wit, murder and the destruction of property by means of explosive or fire as prohibited by India Penal Code sections 300 and 435, in violation of 18 U.S.C. § 1956(a)(2)(A).

The following facts are drawn from the evidence presented at trial, and are presented in the light most favorable to the government. *See United States v. Ivezaj*, 568 F.3d 88, 90 (2d Cir. 2009). The Khalistan Commando Force ("KCF") is a Sikh terrorist organization responsible for carrying out murders and bombings in India. The organization seeks to compel the Indian government to allow the creation of an independent Sikh state in the Punjab region of India. The KCF has engaged in bombings of Indian security forces, buses, trains, and civilian economic targets resulting in the deaths of thousands in India since the beginning of the organization's existence. The KCF is funded by means of illegal activities, such as bank robbery and kidnapping, as well as through contributions of supporters in North America and Europe. Since 1989, the KCF has been led by Paramjit Singh Panjwar ("Panjwar"). Awan stated to others on several occasions that he was a close friend of Panjwar and that he knew Panjwar was a leader of the KCF. Awan was also wiretapped by the government making phone calls to Panjwar from the Metropolitan Detention Center ("MDC") in

3

1    Brooklyn, New York.[2] Awan told a fellow inmate at the MDC, Harjit Singh ("Harjit"), that he knew

2    that Panjwar was involved in several hundred bombings, a plot to attack Indian Prime Minister Indira

3    Gandhi in 1984,[3] and attacks on Indian security forces in India, and that the KCF received training

4    at camps in Pakistan run by the Pakistani intelligence service.

5         From 1998 through 2001, using a variety of methods, Awan served as a conduit for the

6    transfer of funds from KCF supporters in the United States to Panjwar.  In particular, Awan told

7    Harjit and admitted to investigators that he had transferred money to Panjwar after meeting with a

8    number of sources on several occasions.  Two members of the KCF funding network in the United

9    States who cooperated with the government, Gurbax Singh ("Gurbax") and Baljinder Singh

10   ("Baljinder"), also testified that they both had delivered money for KCF to Awan on different

11   occasions.  Baljinder later spoke to Panjwar on the phone about delivering the money to Awan, and

12   Panjwar told him that Awan was "a good friend" of his and a "trusted person" who had done "this

13   work" already.  Trial Tr. 447.  Awan told Harjit and investigators that he used the bank accounts of

14   several businesses to transfer the money to Panjwar.

15        In or around 2003 and 2004, while both were detained at the MDC, Awan attempted to

16   recruit Harjit to travel to Pakistan and receive explosives training at a KCF camp.  Awan discussed

17   with Harjit on several occasions traveling to Pakistan to meet with Panjwar and receiving training

18   in bombmaking and military activities.   Government investigators also wiretapped phone

19   conversations between Awan and Panjwar in which Awan introduced Harjit to Panjwar and Harjit

20   and Panjwar discussed Harjit's traveling to Pakistan for military training.

---

[2] Awan was in custody at the MDC on charges related to credit card fraud.

[3] This plot was not involved in Prime Minister Gandhi's actual assassination in 1984.

4

1        In its proposed calculation of Awan's Sentencing Guidelines, the Probation Department

2   recommended an adjusted offense level of 45 for Awan's 18 U.S.C. § 2339A (material support of

3   terrorism) counts, which included the application of a twelve-level terrorism adjustment pursuant

4   to U.S.S.G. § 3A1.4. The Department also recommended an adjusted offense level of 36 for the 18

5   U.S.C. § 1956 (international money transfer) count, which also included the terrorism adjustment.

6   This yielded an effective Guidelines sentence of 45 years, the statutory maximum sentence for

7   Awan's counts. *See United States v. Awan*, No. CR-06-0154, 2007 WL 2071748, at *1 (E.D.N.Y.

8   July 17, 2007).

9        The terrorism enhancement, U.S.S.G. § 3A1.4, provides as follows:

10        (a) If the offense is a felony that involved, or was intended to promote, a federal
11        crime of terrorism, increase by 12 levels; but if the resulting offense level is less than
12        level 32, increase to level 32.
13        (b) In each such case, the defendant's criminal history category from Chapter Four
14        (Criminal History and Criminal Livelihood) shall be Category VI.
15

16   U.S.S.G. § 3A1.4. Application Note 1 provides that the term "federal crime of terrorism" is defined

17   by "the meaning given that term in 18 U.S.C. § 2332b(g)(5)," which provides a two-part definition.

18   First, a federal crime of terrorism is an "offense that . . . is calculated to influence or affect the

19   conduct of government by intimidation or coercion, or to retaliate against government conduct." 18

20   U.S.C. § 2332b(g)(5)(A). Second, the offense must be a violation of a specific federal criminal

21   statute listed in 18 U.S.C. § 2332b(g)(5)(B). The list includes, *inter alia*, violations of "[18 U.S.C.

22   §] 956(a)(1) (relating to conspiracy to murder, kidnap, or maim persons abroad)" and "[18 U.S.C.

23   §] 2339A (relating to providing material support to terrorists)." *Id.* § 2332b(g)(5)(B)(i). Awan was

24   convicted of violating § 2339A, and each § 2339A count involved the provision of material support

25   and resources to be used in a conspiracy to violate § 956. Violations of 18 U.S.C. § 1956(a)(2)(A)

5

1    (the international money transfer crime of which Awan was convicted) are not included in §

2    2332b(g)(5)(B).

3          Before sentencing, the government argued that the § 3A1.4 terrorism enhancement applied

4    to all of Awan's counts because each count was "intended to promote" a federal crime of terrorism,

5    namely a conspiracy to murder, kidnap, or maim persons abroad in violation of 18 U.S.C. § 956.

6    Gov. Sent. Mem. 7. Further, the government argued that Awan's money laundering count was

7    "intended to promote" an additional federal crime of terrorism, the provision of material resources

8    and support in violation of 18 U.S.C. § 2339A. Gov. Supp. Sent. Mem. 2. Finally, the government

9    argued that Awan's substantive and conspiratorial material support crimes in violation of 18 U.S.C.

10    § 2339A "involved" a federal crime of terrorism. *Id.* at 9-10. Awan challenged the application of

11    the terrorism enhancement to any of his counts of conviction, arguing, *inter alia*, that his conduct

12    did not satisfy the so-called "motivational element" of 18 U.S.C. § 2332b(g)(5)(A), which defines

13    "a federal crime of terrorism" as a statutorily specified offense "calculated to influence or affect the

14    conduct of government by intimidation or coercion, or to retaliate against government conduct."

15    Def. Obj. to PSR ¶ 24.

16          The district court declined to apply either the "involved" or "intended to promote" prongs

17    of U.S.S.G.§ 3A1.4 to any of Awan's counts. First, because Awan was convicted of a crime listed

18    in 18 U.S.C. § 2332b(g)(5)(B), namely, providing and conspiring to provide material resources and

19    support to be used in a conspiracy to commit murder, kidnapping, and maiming outside of the United

20    States, in violation of 18 U.S.C. § 2339A, the district court found it unnecessary to consider whether

21    Awan's third crime, transferring money internationally with the intent to promote unlawful activity

22    in violation of 18 U.S.C. § 1956, was "intended to promote" a federal crime of terrorism. The court

1   reasoned: "[S]ince § 2332b(g)(5)(B) includes § 2339A in the list of crimes whose violation may be

2   a 'federal crime of terrorism[,]' there is no need to determine whether the violation of § 1956 is

3   properly deemed a *promotion* of a federal crime of terrorism for the purposes of § 3A1.4." *Awan*,

4   2007 WL 2071748, at *1 n.6. As a result, the court apparently limited its analysis of the applicability

5   of the terrorism enhancement to the "involved" prong of § 3A1.4. The court noted that "a 'federal

6   crime of terrorism' under § 2332b requires both the commission of one of the enumerated crimes

7   and a finding that the required motivational element set forth in § 2332b(g)(5)(A) has been met."

8   *Id.* at *4 (footnote omitted). Next, the district court found that the evidence at trial and the facts

9   stated in the Presentence Report ("PSR") were insufficient to prove by a preponderance of the

10  evidence that Awan's actions satisfied the "motivational element," *i.e.*, that his conduct was

11  "calculated to influence or affect the conduct of government." *Id.* (quoting 18 U.S.C. §

12  2332b(g)(5)(A)). Thus, the district court determined that the "involved" prong was inapplicable and

13  calculated Awan's Guidelines range without the terrorism adjustment, *id.*, resulting in a Guidelines

14  range of 168 to 210 months, *id.* at *7. The district court sentenced Awan in principal part to 168

15  months in prison. Awan is now serving his sentence.

16                                     **DISCUSSION**
17
18          We review a district court's sentence for procedural and substantive reasonableness, a

19  standard "akin to review for abuse of discretion." *United States v. Cavera*, 550 F.3d 180, 188 (2d

20  Cir. 2008) (en banc) (quoting *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006)). A district

21  court is procedurally obligated to calculate and consider the Sentencing Guidelines in reaching an

22  independent decision as to sentence. *See Gall v. United States*, 552 U.S. 38, 49-50 (2007); *Cavera*,

23  550 F.3d at 189 (observing that sentencing judges should "begin all sentencing proceedings by

7

1    calculating . . . the applicable Guidelines range" before reaching "individualized judgment in each

2    case"); *see also* 18 U.S.C. § 3553(a)(4).  We review resulting questions of interpretation of the

3    Sentencing Guidelines *de novo.  United States v. Meskini,* 319 F.3d 88, 91 (2d Cir. 2003).  When

4    finding facts relevant to sentencing for Guidelines calculation purposes, "the district court [is]

5    required to use the preponderance of the evidence standard." *United States v. Salazar,* 489 F.3d 555,

6    558 (2d Cir. 2007) (per curiam).  We apply the clear error standard when evaluating a district court's

7    findings of fact.  *United States v. Salim,* 549 F.3d 67, 72 (2d Cir. 2008).

8         The government argues that the district court committed two errors in its analysis of

9    § 3A1.4's applicability.  First, the government contends that the district court erred in considering

10   only the "involved" prong of § 3A1.4 in concluding that no terrorism enhancement was warranted

11   in this case, thereby ignoring § 3A1.4's alternative "intended to promote" prong.  Second, the

12   government submits that in applying the "involved" prong, the district court clearly erred in

13   concluding that Awan's conduct failed to satisfy the requirement set forth in § 2332b(g)(5)(A) that

14   it be "calculated to influence or affect the conduct of government by intimidation or coercion, or to

15   retaliate against government conduct" — what the district court termed the "motivational element."

16   *Awan,* 2007 WL 2071748, at *2 (quoting 142 Cong. Rec. H3305-01, H3337 (Apr. 15, 1996)).  We

17   conclude that the district court committed procedural error in two respects.  First, it erroneously

18   concluded that the "intended to promote" prong was inapplicable if one of the crimes of conviction

19   was a crime listed in 18 U.S.C. § 2332b(g)(5)(B).  Second, it erroneously concluded that the statutory

20   definition of a "federal crime of terrorism," 18 U.S.C. § 2332b(g)(5), which is incorporated into the

21   Guideline, requires the government to prove the defendant's motive for committing the crime of

22   conviction.

8

## I. The "Intended to Promote" Prong of U.S.S.G. § 3A1.4

### A. Interpreting U.S.S.G. § 3A1.4

"Canons of [statutory] construction ordinarily suggest that terms connected by a disjunctive be given separate meanings, unless the context dictates otherwise." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979); *see also Mizrahi v. Gonzales*, 492 F.3d 156, 164 (2d Cir. 2007). This principle applies with equal force to Guidelines interpretation. "The Guidelines must be interpreted . . . so no words are discarded as meaningless, redundant or surplusage." *United States v. Arnaout*, 431 F.3d 994, 1001 (7th Cir. 2005); *see also United States v. Mandhai*, 375 F.3d 1243, 1247 (11th Cir. 2004). Thus, the disjunctive phrase from U.S.S.G. § 3A1.4 at issue here — "[i]f the offense . . . involved, or was intended to promote, a federal crime of terrorism" — makes clear that the predicate offense must either (1) "involve" a federal crime of terrorism or (2) be "intended to promote" a federal crime of terrorism, and that each clause has a separate meaning. We start with the meaning of the "involved" prong, which, by comparison, illuminates the meaning of the "intended to promote" prong.

"When interpreting the Guidelines, we begin with the basic rules of statutory construction, and we give all terms in the Guidelines their ordinary meanings unless there are persuasive reasons not to do so." *United States v. Mullings*, 330 F.3d 123, 124-25 (2d Cir. 2003) (per curiam). The ordinary meaning of "involved" is "to have within or as part of itself," or to "include." *Webster's Third New International Dictionary* 1191 (2002); *see also Arnaout*, 431 F.3d at 1001 ("The ordinary and plain meaning of 'involved' means 'to include.'"); *Mandhai*, 375 F.3d at 1247-48 ("The term 'involve' means to 'include.'"). As the Sixth Circuit has pointed out in construing § 3A1.4, "[t]he word 'involved' occurs frequently throughout the Guidelines, both in the substantive provisions and

9

1    in the commentary, and is typically employed to mean 'included.'" *United States v. Graham*, 275

2    F.3d 490, 516 (6th Cir. 2001).  For example, the aggravating role enhancement in U.S.S.G.

3    § 3B1.1(a) provides that "[i]f the defendant was an organizer or leader of a criminal activity that

4    *involved* five or more participants or was otherwise extensive, increase by 4 levels."  U.S.S.G.

5    § 3B1.1(a) (emphasis added); *see also Graham*, 275 F.3d at 516 (collecting examples).  Thus, a

6    defendant's offense "involves" a federal crime of terrorism when his offense includes such a crime,

7    *i.e.*, the defendant committed, attempted, or conspired to commit a federal crime of terrorism as

8    defined in 18 U.S.C. § 2332b(g)(5), or his relevant conduct includes such a crime.  *Id.* at 516; *see*

9    *also United States v. Stewart*, 590 F.3d 93, 138 (2d Cir. 2009); *Arnaout*, 431 F.3d at 1001 ("[T]he

10   word 'involved,' as used in § 3A1.4, signifies that where a defendant's offense or relevant conduct

11   includes a federal crime of terrorism as defined in 18 U.S.C. § 2332b(g)(5)(B), then § 3A1.4 is

12   triggered.").

13        Turning to the "intended to promote" prong, we "begin with the assumption that the

14   'intended to promote' language means something different from the word 'involved.'" *Graham*, 275

15   F.3d at 516; *see also Stewart*, 590 F.3d at 138; *Mandhai*, 375 F.3d at 1248 ("The phrase 'or intended

16   to promote' [in § 3A1.4] . . . must have additional meaning.").  Because § 3A1.4 is written as a

17   disjunctive phrase and must be interpreted to avoid redundancy, the "intended to promote" prong

18   must be applicable in some circumstances in which the "involved" prong is not, *i.e.*, where the

19   defendant's offense or relevant conduct does *not* include a federal crime of terrorism.

20        The ordinary meaning of "promote" includes "to bring or help bring into being," to

21   "contribute to the growth, enlargement, or prosperity of," or to "encourage" or "further." *Webster's*

22   *Third New International Dictionary* 1815 (2002); *see also Arnaout*, 431 F.3d at 1002 ("In its

10

1    ordinary usage, 'promote' means 'to help or encourage.'").  According to the ordinary meaning of

2    § 3A1.4, then, an offense is "intended to promote" a federal crime of terrorism when the offense is

3    intended to help bring about, encourage, or contribute to a federal crime of terrorism as that term is

4    defined in 18 U.S.C. § 2332b(g)(5).  *See Stewart*, 590 F.3d at 137 ("The criminal conduct at issue

5    need not itself meet the statutory definition of a federal crime of terrorism if 'a goal or purpose [of

6    the defendant's act] was to bring or help bring into being a crime listed in 18 U.S.C.

7    § 2332b(g)(5)(B).'"(alteration in original) (quoting *Mandhai*, 375 F.3d at 1248)); *Arnaout*, 431 F.3d

8    at 1002 ("[T]he word 'promote,' as used in § 3A1.4, signifies that where a defendant's offense or

9    relevant conduct helps or encourages a federal crime of terrorism as defined in 18 U.S.C.

10   § 2332b(g)(5)(B), then § 3A1.4 is triggered.").

11          The ordinary meaning of the "intended to promote" prong gives that clause a separate

12   meaning from the "involved" prong of § 3A1.4.  The "intended to promote" prong applies where the

13   defendant's offense is intended to encourage, further, or bring about a federal crime of terrorism,

14   even though the defendant's own crime of conviction or relevant conduct may not include a federal

15   crime of terrorism.  And this has an important implication: To qualify as a federal crime of terrorism

16   that may serve as a predicate for a § 3A1.4 enhancement, an offense must be listed in 18 U.S.C.

17   § 2332b(g)(5)(B) and, in addition, it must be an "offense that . . . is calculated to influence or affect

18   the conduct of government by intimidation or coercion, or to retaliate against government conduct,"

19   as provided by 18 U.S.C. § 2332b(g)(5)(A).  Under the "intended to promote" prong, however, so

20   long as the defendant's offense was intended to encourage, further, or bring about a federal crime

21   of terrorism as statutorily defined, the defendant himself does not have to commit an offense listed

22   in § 2332b(g)(5)(B), and the defendant's offense need not itself be "calculated" as described in

1    § 2332b(g)(5)(A). *See Stewart*, 590 F.3d at 137; *cf. Graham*, 275 F.3d at 516 (pursuant to the

2    "intended to promote" prong, "the offense of conviction itself need not be a 'Federal crime of

3    terrorism'").

4          A narrower reading of § 3A1.4 would defy common sense. If an offense cannot be "intended

5    to promote" a federal crime of terrorism unless the defendant himself committed one of the crimes

6    specified in § 2332b(g)(5)(B) or committed a crime that was itself calculated to influence, affect, or

7    retaliate against government conduct as required by § 2332b(g)(5)(A), § 3A1.4 would not apply to

8    defendants who clearly "intend to promote" federal crimes of terrorism committed by *other persons*.

9    For example, as the government suggests, a defendant, motivated solely by pecuniary gain, might

10   sell weapons to a terrorist organization. It would be absurd to conclude that such a defendant's

11   criminal conduct could not be subject to a § 3A1.4 enhancement because it was not itself a listed

12   offense that is "calculated to influence or affect the conduct of government by intimidation or

13   coercion, or to retaliate against government conduct." 18 U.S.C. § 2332b(g)(5)(A).

14         To summarize, we confirm what we noted in *Stewart* and join the other Circuits that have

15   held that "[a] defendant who intends to promote a federal crime of terrorism has not necessarily

16   completed, attempted, or conspired to commit the crime; instead the phrase implies that the

17   defendant has as one purpose of his substantive count of conviction or his relevant conduct the intent

18   to promote a federal crime of terrorism." *Graham*, 275 F.3d at 516; *see also Stewart*, 590 F.3d at

19   137; *Arnaout*, 431 F.3d at 1002; *Mandhai*, 375 F.3d at 1248. It follows that § 3A1.4 may apply

20   without a showing that the defendant's conduct constitutes an offense listed in 18 U.S.C.

21   § 2332b(g)(5)(B) or satisfies the "calculation" requirement set forth in 18 U.S.C. § 2332b(g)(5)(A).

22                                    **B. Application**

12

1      As our explication of the "intended to promote" prong of § 3A1.4 indicates, the district court

2   erred in concluding that, because Awan was convicted of a crime listed in 18 U.S.C.

3   § 2332b(g)(5)(B), *i.e.*, violations of 18 U.S.C. § 2339A, there was "no need to determine whether

4   the violation of § 1956 [or Awan's violations of § 2339A] [are] properly deemed a *promotion* of a

5   federal crime of terrorism for the purposes of § 3A1.4." *Awan*, 2007 WL 2071748, *1 n.6.  In effect,

6   the district court assumed that the "intended to promote" prong requires a finding that Awan's

7   personal conduct satisfies the "calculation" requirement of § 2332b(g)(5)(A).  But the government

8   should have been permitted to prove by a preponderance of the evidence that, even if Awan's crimes

9   of conviction and relevant conduct did not satisfy the calculation requirement for a federal crime of

10   terrorism, Awan's crimes and relevant conduct were intended to promote a federal crime of terrorism

11   committed or to be committed by other individuals — in his case, KCF members who participated

12   in fundraising in the United States or attacks in India.

13      The government argued before the district court (1) that each of Awan's counts of conviction

14   was intended to promote a conspiracy to commit murder, kidnaping, or maiming outside the United

15   States in violation of 18 U.S.C. § 956(a), a federal crime of terrorism, and (2) that Awan's

16   international money transfer conviction was also intended to promote another federal crime of

17   terrorism, to wit, the  provision of material support and resources to be used in a conspiracy to

18   commit murder, kidnaping, or maiming outside the United States as prohibited by 18 U.S.C.

19   § 956(a), in violation of 18 U.S.C. § 2339A.  Although we express no views on the merits of these

20   factual contentions, we note that the application of § 3A1.4 in such circumstances does not require

21   a finding that Awan was personally motivated by a desire to influence or affect the conduct of

22   government.  Rather, the government need only demonstrate that Awan intended to promote a crime

13

1    calculated to have such an effect, *i.e.*, that his offenses were intended to promote a federal crime of

2    terrorism as defined in § 2332b(g)(5), whatever Awan's reason for committing them. *See infra* Part

3    II. The district court erred in not considering the government's arguments relating to the "intended

4    to promote" prong and, more generally, by in effect requiring the government to establish proof of

5    Awan's motive. *See Awan*, 2007 WL 2071748, at *4. This constitutes procedural error under

6    *United States v. Gall*, 552 U.S. 38 (2007) (stating that "improperly calculating . . . the Guidelines

7    range" constitutes "procedural error," *id.* at 51). Thus, Awan's sentence is vacated and we remand

8    for reconsideration of the "intended to promote" prong of § 3A1.4 consistent with this opinion.

9                    **II. The "Involved" Prong of U.S.S.G. § 3A1.4**

10         The government also challenges the district court's determination, pursuant to the "involved"

11    prong of § 3A1.4, that there was insufficient evidence to find that Awan's conduct was "calculated

12    to influence or affect the conduct of government by intimidation or coercion, or to retaliate against

13    government conduct" under 18 U.S.C. § 2332b(g)(5)(A). *Awan*, 2007 WL 2071748, at *4. The

14    government does not dispute that in the circumstances of this case and pursuant to this prong of

15    § 3A1.4, it was necessary for the district court to find this requirement satisfied in order to apply the

16    terrorism enhancement. It argues, instead, that the court committed clear error in concluding that

17    the "calculation" element was not proven by a preponderance of the evidence.

18         The district court reasoned as follows:

19               While the evidence at trial establishes that defendant provided funds to the KCF and
20               that he knew what the KCF was likely to do with those funds, *it is speculative to*
21               *conclude that the defendant had any particular motive in mind and, in particular,*
22               *that he was motivated by a desire to influence the policies of the Indian government*
23               *or retaliate for some unspecified wrong.* On the contrary, the evidence
24               *supports . . . a factual finding that the defendant had private purposes in mind*, that
25               he enjoyed associating with terrorists[, and enjoyed]  the prestige or potential

influence obtained by associating with Panjwar, a leader of the KCF, and with the Pakistani intelligence services, the so called ISI. Indeed, the government itself has previously referred to this motivation. When defendant raised the issue of motivation in his Rule 29 motion, the government first argued (correctly) that there was no need to establish motive to establish criminal intent and then further argued that based on defendant's statement that he wanted to associate with "terrorists," "one motive for supporting Panjwar was a desire to associate with people he considered influential and important." Government's Rule 29 Brief, p. 34. Since I cannot find from the evidence before me that defendant was motivated by a desire to influence or retaliate against the Indian government, the motivational element of a "federal crime of terrorism" is not demonstrated by a preponderance of the evidence and the terrorist enhancements will not be applied.

*Id.* (emphasis added) (footnotes omitted).

The district court's analysis, however, addresses the wrong question. Though § 2332b(g)(5)(a) has been referred to as encompassing a "motivational element" or requirement, *see, e.g.*, 142 Cong. Rec. H3305-01, H3337 (Apr. 15, 1996), that characterization is more confusing than helpful. Section 2332b(g)(5)(A) does not require proof of a defendant's particular motive. "Motive" is concerned with the rationale for an actor's particular conduct. *See, e.g., United States v. Aguilar*, 585 F.3d 652, 656, 660 (2d Cir. 2009) (discussing motive as underlying purpose); Wayne R. LaFave, *Substantive Criminal Law* § 5.3 (2d ed. 2009) (discussing definitions of motive). "Calculation" is concerned with the object that the actor seeks to achieve through planning or contrivance. *See Webster's Third New International Dictionary Unabridged* 315 (1986) (defining "calculated," in pertinent part, as "planned or contrived so as to accomplish a purpose or achieve an effect; thought out in advance"). Calculation may often serve motive, but they are not, in fact, identical. Section 2332b(g)(5)(A) does not focus on the defendant but on his "offense," asking whether it was calculated, *i.e.*, planned — for whatever reason or motive — to achieve the stated object. Thus, as we noted in *Stewart*, the section is better understood as imposing a requirement "that the *underlying*

15

1    *felony* [be] calculated to influence or affect the conduct of government by intimidation or coercion,

2    or to retaliate against government conduct." *Stewart*, 590 F.3d at 138 (emphasis added). Clearly,

3    a person may intend and may commit an offense that is so calculated even if influencing or

4    retaliating against government is not his personal motivation. Thus, a person who murders a head

5    of state, for instance, sure in the knowledge that his crime will influence or affect the conduct of

6    government, satisfies the terms of § 2332b(g)(5)(A) even if his particular *motivation* in committing

7    the murder is to impress a more established terrorist with his abilities.

8         Here, whatever Awan's motive might have been in committing the crimes for which he was

9    convicted, commission of crimes listed in § 2332b(g)(5)(B) satisfies the "involved" prong of the

10   terrorism enhancement so long as the government shows by a preponderance of the evidence that

11   Awan had the "specific intent," *Stewart*, 590 F.3d at 138, to commit an offense that was "calculated

12   to influence or affect the conduct of government by intimidation or coercion, or to retaliate against

13   government conduct." 18 U.S.C. § 2332b(g)(5)(A). Contrary to the district court's analysis, Awan's

14   motive is simply not relevant. *See, e.g.*, *United States v. Simon*, 425 F.2d 796, 808-09 (2d Cir. 1969)

15   (Friendly, *J.*) (noting the distinction between the concepts of motive and criminal intent, and

16   concluding that even if no motive were shown at all the government could still prove the requisite

17   intent).

18        The government correctly points out that there is little doubt that Awan (1) knew that the

19   objective of Panjwar and the KCF was to influence the Indian government through violence, and

20   (2) knew that the money he provided to the KCF would be used toward that end. Awan may not

21   have been personally motivated by that objective. Awan may have been motivated, as the district

22   court found, by a desire for the prestige and potential influence obtained by associating with a

1    terrorist like Panjwar, while lacking "any political motivation and, in particular, any motivation

2    having to do with India." *Awan*, 2007 WL 2071748, at \*4 n.20.  But the government could still

3    prove that Awan's offenses themselves were "calculated to influence . . . the conduct of

4    government . . ." even if he lacked a specific political motive for committing them.  For example,

5    if the evidence showed that Awan engaged in criminal conduct with knowledge that confederates

6    solicited his actions to effectuate politically motivated bombings in India, or homicidal attacks on

7    that country's security forces or its political leaders, such proof could demonstrate that Awan's

8    crimes were calculated to influence the conduct of government even if he was not personally

9    motivated by that object.  A hired assassin who kills a political leader at the behest of a terrorist

10    organization can hardly disclaim that his crime was calculated to influence the conduct of

11    government simply because he was motivated by greed rather than politics.  We express no view on

12    whether the evidence here supports this argument.  We merely conclude that the district court's

13    misconstruction of the "involved" prong of § 3A1.4 is further procedural error requiring remand.

14                                      **III. Conclusion**

15    Because the district court failed to consider the application of the "intended to promote"

16    prong of U.S.S.G. § 3A1.4 to Awan's conduct and misconstrued the "involved" prong, we VACATE

17    the sentence imposed by the district court and REMAND for further proceedings consistent with this

18    opinion.

19

A True Copy

Catherine O'Hagan Wolfe, Clerk

United States Court of Appeals, Second Circuit

17